UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division
www.flsb.uscourts.gov

In re:                                              Case No. 10-28135-BKC-AJC

JEANNETTE BRANAM,                                   Chapter 7

     Debtor.
_____/

DREW M. DILLWORTH, Chapter 7 Trustee,               Adv. Case No.

     Plaintiff,
vs.

JEANNETTE BRANAM, JEFFREY BRANAM,
CITIZENS PROPERTY INSURANCE
CORPORATION and STAR ISLAND
FINANCIAL, LLC,

     Defendants.
_____/

**COMPLAINT FOR TURNOVER OF PROPERTY OF THE BANKRUPTCY ESTATE,
AVOIDANCE AND RECOVERY OF UNAUTHORIZED POST-PETITION TRANSFER(S),
DETERMINATION OF THE VALIDITY, PRIORITY AND EXTENT OF
<u>INTEREST(S) IN PROPERTY AND INJUNCTIVE RELIEF</u>**

       Drew M. Dillworth, the duly appointed Chapter 7 Trustee of the above-captioned

bankruptcy case (the "Trustee"), by undersigned counsel, brings this Complaint for Turnover

of Property of the Bankruptcy Estate, Avoidance and Recovery of Unauthorized Post-

Petition Transfer(s), Determination of the Validity, Priority and Extent of Interest(s) in

Property and Injunctive Relief against Jeannette Branam (the "Debtor"), Jeffrey Branam,

Citizens Property Insurance Corporation and Star Island Financial, LLC (the "Defendants"),

and in support thereof, alleges as follows:

**<u>Jurisdiction, Venue and Parties</u>**

       1.     This case was commenced by the filing of a voluntary Chapter 7 petition on

June 28, 2010 (the "Petition Date").

       2.     This is an action for turnover of property of the bankruptcy estate, pursuant to

11 U.S.C. § 542, for the avoidance and recovery of unauthorized post-petition transfer(s),

pursuant to 11 U.S.C. §§ 549 and 550, for the determination of the validity, priority and extent of interest(s) in property, pursuant to Fed. R. Bankr. P. 7001(2) and for injunctive relief.

3.    This is a core proceeding and this Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 157 and 1334 and Fed. R. Bankr. P. 7001.

4.    Venue is proper herein pursuant to 28 U.S.C. §§ 1408 and 1409.

5.    Drew M. Dillworth is the duly appointed and acting Chapter 7 trustee for the bankruptcy estate.

6.    Jeannette Branam is the above-referenced Debtor of this bankruptcy proceeding.

7.    Jeffrey Branam is an individual currently residing in the state of Florida, is otherwise *sui juris* and, upon information and belief, is currently in possession of property that can be recovered pursuant to 11 U.S.C. §§ 549 and 550.  Jeffrey Branam is the son of the Debtor, and is therefore an "insider", as that term is defined in 11 U.S.C. § 101.

8.    Citizens Property Insurance Corporation ("Citizens") is *sui juris* and is either in possession of property of the estate, or may have a claim to property of the estate.

9.    Star Island Financial, LLC ("Star Island") is *sui juris* and may have a claim to property of the estate.

### General Allegations

10.    The Debtor owns the real property located at 42 Star Island Dr, Miami Beach, FL 33139 (the "Property").    The Debtor scheduled the value of the Property at $5,471,000.00 and scheduled liens against the Property totaling $12,492,802.00[1].

11.    Prior to the Petition Date, the Debtor insured the Property through an

---

[1] On August 30, 2010, JPMorgan Chase Bank, National Association ("Chase Bank") filed a Motion for Relief from the Automatic Stay [ECF No. 30] (the "Motion for Relief"), so that it could proceed with a foreclosure action against the Property.  In the Motion for Relief, Chase Bank alleged that it was owed $11,038,203.68 as of the Petition Date.  On September 14, 2010, the Motion for Relief was granted [ECF No. 33], and Chase Bank was afforded relief from the automatic stay to pursue its *in rem* remedies against the Property.

insurance policy with Citizens, bearing Policy No. 5780826 (the "Insurance Policy").  Under the Insurance Policy, Citizens insured the Debtor against certain losses to the Property.

12.      Prior to the Petition Date, on or around October 24, 2005, the Debtor sustained a loss to the Property as a result of damage from Hurricane Wilma, which, upon information and belief, caused damage to the roof, building, appurtenant structures and contents inside the Property.  The Debtor therefore had an insurance claim to cover this damage, which was assigned Claim No. 276650 by Citizens (the "Insurance Claim").

13.      The Insurance Claim was unequivocally property of the Debtor as of the Petition Date, and is therefore property of the bankruptcy estate pursuant to 11 U.S.C. § 541.

14.      The Debtor had an affirmative duty to disclose the Insurance Claim on her bankruptcy Schedules and Statement of Financial Affairs, but failed to do so.  Therefore, the Insurance Claim was not claimed as exempt by the Debtor, as it was not disclosed whatsoever in the Debtor's schedules.

15.      Instead of disclosing the existence of the Insurance Claim in her bankruptcy Schedules and Statement of Financial Affairs, or to the Trustee, the Debtor chose to instead secretly prosecute the Insurance Claim for her own benefit and/or the benefit of her son, Jeffrey Branam.

16.      On or around April 9, 2010 (less than 3 months prior to the Petition Date), the Debtor and Citizens agreed to submit to an appraisal process to determine the proper amount/value of the Insurance Claim.

17.      On October 22, 2010, the Debtor commenced an action against Citizens, for damages under the Insurance Policy relating to the Insurance Claim, in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, Case No. 10-56927-CA-11 (the "State Court Lawsuit").  A true and correct copy of the Complaint (without exhibits) in the State Court Lawsuit is attached hereto as Exhibit "A".

18.     The State Court Lawsuit was commenced without the knowledge or authority of the Trustee, even though the Debtor's bankruptcy case was already pending and the Insurance Claim was property of the bankruptcy estate.

19.     On or around November 19, 2010, the appraisal process was completed and an Appraisal Panel entered an Appraisal Award for the Insurance Claim in the amount of $377,831.08.    However, Citizens claimed that this amount should be reduced by $195,073.73, based upon its April 9, 2010 Memorandum of Appraisal.

20.     On January 19, 2011, Citizens issued two (2) payments to the Debtor on account of the Insurance Claim, in the amounts of $1,423.98 and $100.600.18, respectively, totaling $102,024.16 (the "Initial Insurance Proceeds"), after application of the policy deductible amount of $82,550.00.  True and correct copies of the Initial Insurance Proceeds are attached hereto as Exhibit "B".

21.     Upon information and belief, the Debtor transferred the Initial Insurance Proceeds, either in whole or in part, to her son, Jeffrey Branam, for his own use and benefit (the "Post-Petition Transfers").

22.     The Post-Petition Transfers occurred after the commencement of this bankruptcy case and were not authorized by the Trustee, the Court or the Bankruptcy Code.

23.     Thereafter, on September 15, 2011, the Debtor filed a First Amended Complaint in the State Court Lawsuit, detailing certain events that took place with regard to the Insurance Claim, as referenced above.  A true and correct copy of the First Amended Complaint, with exhibits, is attached hereto as Exhibit "C".

24.     During the pendency of this bankruptcy proceeding, after Chase Bank obtained relief from the automatic stay, as referenced above, to proceed with its *in rem* rights against the Property, it assigned its interest(s) in the underlying note, mortgage and loan documents to Star Island.

25.     On March 27, 2012, Star Island obtained a Final Summary Judgment of

Foreclosure (the "Final Judgment") in its favor against the Debtor, in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, Case No. 10-01614-CA-09. Pursuant to the Final Judgment, the Miami-Dade Circuit Court determined that Star Island held a valid mortgage against the Property with rights superior to other lien holders.  A true and correct copy of the Final Judgment is attached hereto as Exhibit "D".

26.     Upon information and belief, on or around April 23, 2012, Citizens agreed to disburse an additional $199,000.00 on account of the Insurance Claim (the "Remaining Insurance Proceeds").

27.     Upon information and belief, Star Island is claiming an interest in the Insurance Claim (and therefore, the Initial Insurance Proceeds and the Remaining Insurance Proceeds), by virtue of the terms of the underlying mortgage with the Debtor.

28.     On or around June 6, 2012, the Trustee first became aware of the existence of the Insurance Claim.

29.     On or around June 7, 2012, Star Island filed an Emergency Motion to Intervene in the State Court Lawsuit, in order to protect its interest in the Insurance Claim. A true and correct copy of Star Island's Emergency Motion to Intervene is attached hereto as Exhibit "E".

30.     On or around June 11, 2012, the Trustee filed an Emergency Motion to Intervene in the State Court Lawsuit, in order to protect the Trustee's interest in the Insurance Claim.  A true and correct copy of the Trustee's Emergency Motion to Intervene is attached hereto as Exhibit "F".

31.     On July 26, 2012, the Miami-Dade Circuit Court entered an order authorizing the Trustee's and Star Island's intervention in the State Court Lawsuit, a copy of which is attached hereto as Exhibit "G".

### Count 1 – Turnover of the Initial Insurance Proceeds (11 U.S.C. § 542)
### (Against Jeffrey Branam)

32.     The Trustee realleges all of the allegations set forth in each of the paragraphs above.

33.     Upon information and belief, Jeffrey Branam is in possession, control and custody of the Initial Insurance Proceeds, which is property of the bankruptcy estate, and which the Trustee may use, sell or lease under 11 U.S.C. § 363, in the amount of at least $102,024.16.

WHEREFORE, the Trustee demands judgment pursuant to 11 U.S.C. § 542(a) against Jeffrey Branam declaring that he shall deliver to the Trustee, for the benefit of the above-captioned bankruptcy estate, any and all property of the bankruptcy estate in his possession, custody or control that the Trustee is entitled to use, sell or lease pursuant to 11 U.S.C. § 363, totaling at least $102,024.16, and for such other relief this Court deems just and equitable.

### Count 2 – Avoidance and Recovery of Unauthorized Post-Petition Transfer(s)
### (11 U.S.C. §§ 549 and 550) (Against Jeffrey Branam)

34.     The Trustee realleges all of the allegations set forth in each of the paragraphs above.

35.     The Post-Petition Transfers referenced above, in the aggregate amount of at least $102,024.16, occurred after the commencement of this bankruptcy case and were not authorized by the Trustee, the Court or the Bankruptcy Code.

36.     This action is being brought within two (2) years after the date(s) of the Post-Petition Transfers, which took place on or after January 19, 2011.

37.     The Post-Petition Transfers are therefore avoidable by the Trustee pursuant to 11 U.S.C. § 549.

38.     The Trustee may recover the amount of the Post-Petition Transfers, that being at least $102,024.16, from Jeffrey Branam, who was either the initial transferee (or

the person for whose benefit such transfer(s) were made) or an immediate or mediate transferee.

WHEREFORE, the Trustee respectfully requests that the Court enter a judgment in favor of the Trustee and against Jeffrey Branam, for: (1) the avoidance of the Post-Petition Transfers and any other unauthorized post-petition transfers made after the Petition Date; (2) the recovery of at least $102,024.16 from Jeffrey Branam, as well as any other unauthorized post-petition transfers made after the Petition Date; (3) the award of court costs and interest; and (4) such other and further relief as the Court deems just and proper.

### Count 3 – Turnover of the Remaining Insurance Proceeds (11 U.S.C. § 542) (Against Jeannette Branam and Citizens Property Insurance Corporation)

39.     The Trustee realleges all of the allegations set forth in each of the paragraphs above.

40.     Citizens is in possession of the Remaining Insurance Proceeds in the amount of $199,000.00.

41.     Accordingly, Citizens owes a debt that is property of the bankruptcy estate and that is mature, payable on demand or on order.

42.     Alternatively, Citizens is in possession, control and custody of the Remaining Insurance Proceeds, which is property of the bankruptcy estate, and which the Trustee may use, sell or lease under 11 U.S.C. § 363, in the amount of at least $199,000.00.

43.     Star Island may claim an interest in the Remaining Insurance Proceeds, and to the extent that the Trustee and Star Island are unable to resolve the priority of their respective interest(s) in the Remaining Insurance Proceeds, the Trustee requests Court determination of same.

44.     Jeannette Branam may claim an interest in the Remaining Insurance Proceeds.  However, any such interest is inferior to the Trustee's interest, as the Remaining Insurance Proceeds are property of the bankruptcy estate.

WHEREFORE, the Trustee respectfully requests judgment pursuant to 11 U.S.C. § 542(a) against Citizens and/or Jeannette Branam declaring that Citizens and/or Jeannette Branam (whichever defendant is in possession of the Remaining Insurance Proceeds at the time of judgment) shall deliver to the Trustee, for the benefit of the above-captioned bankruptcy estate, any and all property of the bankruptcy estate in their possession, custody or control that the Trustee is entitled to use, sell or lease pursuant to 11 U.S.C. § 363, totaling at least $199,000.00, and for such other relief this Court deems just and equitable.

**Count 4 – Determination of the Validity, Priority and Extent of Interest(s) in the Initial Insurance Proceeds and the Remaining Insurance Proceeds (Against Jeannette Branam, Citizens Property Insurance Corporation and Star Island Financial, LLC)**

45.     The Trustee realleges all of the allegations set forth in each of the paragraphs above.

46.     Citizens may claim an interest in the Remaining Insurance Proceeds, and to the extent that the Trustee and Citizens are unable to resolve the priority of their respective interest(s) in the Remaining Insurance Proceeds, the Trustee requests Court determination of same.

47.     Star Island may claim an interest in the Initial Insurance Proceeds and the Remaining Insurance Proceeds, and to the extent that the Trustee and Star Island are unable to resolve the priority of their respective interest(s) in the Initial Insurance Proceeds and Remaining Insurance Proceeds, the Trustee requests Court determination of same.

48.     Jeannette Branam may claim an interest in the Remaining Insurance Proceeds.  However, any such interest is inferior to the Trustee's interest, as the Remaining Insurance Proceeds are property of the bankruptcy estate.

WHEREFORE, the Trustee requests that the Court enter a judgment determining the validity, priority and extent of the aforementioned interest(s) in the Initial Insurance

Proceeds and Remaining Insurance Proceeds, and for such other relief this Court deems just and equitable.

### Count 5 – Injunctive Relief (Against Jeannette Branam and Jeffrey Branam)

49.     The Trustee realleges all of the allegations set forth in each of the paragraphs above.

50.     The Trustee has a superior claim to the Remaining Insurance Proceeds over any possible claim alleged by Jeannette Branam and/or Jeffrey Branam.

51.     The bankruptcy estate will suffer further irreparable harm if Jeannette Branam and/or Jeffrey Branam are awarded any funds in the State Court Lawsuit, including without limitation, the Remaining Insurance Proceeds, totaling at least $199,000.00, during the pendency of this action.

52.     The Trustee is therefore entitled to injunctive relief, in the form of an Order or judgment enjoining Jeannette Branam and/or Jeffrey Branam from receiving any funds in the State Court Lawsuit, including without limitation, the Remaining Insurance Proceeds.

53.     The Trustee further requests that the Court enter an injunction, directing the Miami-Dade Circuit Court to cease from awarding and/or disbursing any funds in the State Court Lawsuit to Jeannette Branam and/or Jeffrey Branam, or any of their attorneys, agents or any other persons acting on their behalf.

WHEREFORE, the Trustee respectfully requests that the Court enter a judgment enjoining Jeannette Branam and/or Jeffrey Branam from receiving any funds in the State Court Lawsuit, including without limitation, the Remaining Insurance Proceeds, and/or from transferring any of the Remaining Insurance Proceeds and directing the Miami-Dade Circuit Court to cease from awarding and/or disbursing any funds in the State Court Lawsuit to Jeannette Branam and/or Jeffrey Branam, or any of their attorneys, agents or any other persons acting on their behalf, and for such other and further relief as the Court deems just and proper.

Dated: August 8, 2012.

LEIDERMAN SHELOMITH, P.A.
Counsel for Drew M. Dillworth
2699 Stirling Road, Suite C401
Ft. Lauderdale, Florida 33312
Telephone: (954) 920-5355
Facsimile: (954) 920-5371

By:_____/s/_____
ZACH B. SHELOMITH
Florida Bar No. 0122548
zshelomith@lslawfirm.net

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT,
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

JEANNETTE BRANAM,

    Plaintiff,

v.

CITIZENS PROPERTY INSURANCE
CORPORATION,

    Defendant.

GENERAL JURISDICTION DIVISION

Case No.:

10-56927 CA 11

## COMPLAINT

    Plaintiff, JEANNETTE BRANAM, by and through her undersigned counsel, hereby sues Defendant, CITIZENS PROPERTY INSURANCE CORPORATION ("CITIZENS"), and alleges:

1.    This is an action for damages in excess of $15,000.00.

2.    At all times material hereto, Plaintiff was and is a resident of Miami-Dade County, Florida and is otherwise sui juris.

3.    At all times material hereto, Defendant was and is an insurer in Florida.

4.    At all times material hereto, and in consideration of premiums paid by Plaintiff, there was in full force and effect a certain policy of insurance, policy number 5780826 (the "Policy"), issued to Plaintiff by Defendant. A true and correct copy of the Policy is attached hereto as Exhibit "A".

5.    Under the terms of the Policy, Defendant insured Plaintiff against certain losses to Plaintiff's property located at 42 Star Island Drive, Miami Beach, Florida, 33139 ("the property").

6.     At all times material hereto, Plaintiff, as the owner of the property, had an "insurable interest" therein as defined under §627.405 Fla. Stat.; to wit: an actual, lawful, and substantial economic interest in the safety or preservation of the property from loss, destruction, or pecuniary damage or impairment.

7.     Under the terms of the policy, Defendant is obligated to pay insurance benefits for covered losses to Plaintiff's property.

8.     On or about October 24, 2005, while the policy was in full force and effect, Plaintiff sustained a loss to the property as a result windstorm, to wit:  hurricane damage to the roof, building, appurtenant structures, and contents on the residence premises, causing property, wind and water damage to the property ("the loss").

9.     Defendant assigned claim number 276650 to the loss.

10.    Defendant investigated the loss and acknowledged coverage for the loss in an amount unilaterally determined by Defendant to be the total amount of the loss.

11.    Defendant has breached the insurance policy contract by failing to pay the full insurance proceeds due Plaintiff or on Plaintiff's behalf as a result of the loss.

12.    As a direct and proximate result of the foregoing, Plaintiff sustained a loss, destruction, and pecuniary damage or impairment to Plaintiff's insurable interest in, and to the property.

13.    Plaintiff has performed all conditions precedent for the filing of this action or any and all conditions precedent have been otherwise met or waived.

14.    Plaintiff has been obligated to engage the undersigned attorney for the prosecution of this action and is entitled to a reasonable attorney's fee pursuant to Fla. Stat. §627.428.

**WHEREFORE**, Plaintiff prays for judgment for damages under the insurance contract, compensatory damages, pre-judgment interest, the costs incurred in prosecuting this action, attorney's fees pursuant to Florida Statute §627.428, trial by jury, and any such other and further relief as this Honorable Court deems just and proper.

DATED this _22nd_ day of October, 2010.

BUCKLAND & ASSOCIATES, P.A.
1101 Brickell Avenue, Suite 1801
Miami, Florida 33131
Telephone:  305.400.8082
Facsimile:  305.400.8083

By: _____
    JONATHAN C. BUCKLAND
    Florida Bar No. 589144

CITIZENS PROPERTY INSURANCE CORPORATION
JACKSONVILLE, FL 32216

| CHECK DATE | CHECK NUMBER |
|---|---|
| 1/19/11 | 327828 |

IN  PAYMENT OF WINDSTORM LOSS OF 10/24/05   COVERED BY POLICY NO. - 5780826

WIND CLAIM NO. - 276650

IMPORTANT:   ALL PAYEES MUST ENDORSE THIS CHECK

Loss Payment Itemization

Building                    1,423.98

:AW OFFICES OF BUCKLAND & ASSOCIATES
:101 BRICKELL AVE. SUITE 1801
:IIAMI,  FL 33131

THE ATTACHED CHECK IS IN PAYMENT OF ITEMS DESCRIBED ABOVE.
IF INCORRECT, PLEASE NOTIFY US IMMEDIATELY. NO RECEIPT REQUIRED.

PLEASE DETACH STUB
BEFORE CASHING.

| TOTAL | 1423.98 |
|---|---|

ORIGINAL DOCUMENT PRINTED ON CHEMICAL REACTIVE PAPER WITH MICRO-PRINTED BORDER

CITIZENS PROPERTY INSURANCE CORPORATION
6676 Corporate Center Parkway
JACKSONVILLE, FLORIDA  32216-0973

WACHOVIA BANK
JACKSONVILLE, FLORIDA

63-1012
632

327828

| CHECK NUMBER | 327828 | CHECK DATE | 1/19/11 |

WIND POLICY NO.   5780826
WIND CLAIM NO.    276650

| AMOUNT | $****1,423.98* |
|---|---|

**One Thousand Four Hundred Twenty-Three And 98/100**Dollars

PAY   BRAHAM, JEANNETTE
TO THE   & COUNTRYWIDE HOME LOANS & HSBC MTG CORP &LAW
ORDER   OFFICE OF BUCKLAND & ASSOC.& PROFESSIONAL P.A
OF

This document has a colored background and a white background.

THIS DOCUMENT CONTAINS HEAT SENSITIVE INK. TOUCH OR PRESS HERE IF RED IMAGE DISAPPEARS WITH EXPOSURE

**CITIZENS PROPERTY INSURANCE CORPORATION**
JACKSONVILLE, FL 32216

| | CHECK DATE | CHECK NUMBER |
|---|---|---|
| | 1/19/11 | 327820 |

IN    PAYMENT OF WINDSTORM LOSS OF 10/24/05    COVERED BY POLICY NO. - 5780826

WIND CLAIM NO. - 276650

IMPORTANT:    **ALL PAYEES MUST ENDORSE THIS CHECK**

Loss Payment Itemization

Building                          100,600.18

LAW OFFICES OF BUCKLAND & ASSOCIATES, P.A.
1101 BRICKELL AVE. SUITE 1801
MIAMI,   FL 33131

THE ATTACHED CHECK IS IN PAYMENT OF ITEMS DESCRIBED ABOVE.
IF INCORRECT PLEASE NOTIFY US IMMEDIATELY. NO RECEIPT REQUIRED.

PLEASE DETACH STUB
BEFORE CASHING.

| TOTAL | 100600.18 |
|---|---|

ORIGINAL DOCUMENT PRINTED ON CHEMICAL REACTIVE PAPER WITH MICROPRINT BORDER. HOLD AT ANGLE TO VIEW.

**CITIZENS PROPERTY INSURANCE CORPORATION**
6676 Corporate Center Parkway
JACKSONVILLE, FLORIDA  32216-0973

WACHOVIA BANK
JACKSONVILLE, FLORIDA

63-1012
632

327820

| | WIND POLICY NO. | 5780826 |
|---|---|---|
| | WIND CLAIM NO. | 276650 |

| CHECK NUMBER | 327820 | CHECK DATE | 1/19/11 |
|---|---|---|---|

| AMOUNT | $**100,600.18* |
|---|---|

**One Hundred Thousand Six Hundred And 18/100** Dollars

PAY   BRANAM, JEANNETTE
TO THE   & COUNTRYWIDE HOME LOANS & HSBC MTG CORP &LAW
ORDER   OFFICE OF BUCKLAND & ASSOC.& PROFESSIONAL P.A
OF

Susanne K. Murphy

This document has a colored background with a white background.
THIS DOCUMENT CONTAINS HEAT SENSITIVE INK. TOUCH OR PRESS HERE 2 MIN IMAGE TO APPEAR AND DISAPPEAR.

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT,
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

JEANNETTE BRANAM,

    Plaintiff,

v.

CITIZENS PROPERTY INSURANCE
CORPORATION,

    Defendant.

_____/

GENERAL JURISDICTION DIVISION

Case No.: 10-56927 CA 11

Judge: Barbara Areces

**CHRISTIANNE JACOBY**

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

Plaintiff, JEANNETTE BRANAM, by and through her undersigned counsel, hereby sues

Defendant, CITIZENS PROPERTY INSURANCE CORPORATION ("CITIZENS"), and

alleges:

    1.    This is an action for damages in excess of $15,000.00.

    2.    At all times material hereto, Plaintiff was and is a resident of Miami-Dade

County, Florida and is otherwise sui juris.

    3.    At all times material hereto, Defendant was and is an insurer in Florida.

    4.    At all times material hereto, and in consideration of premiums paid by Plaintiff,

there was in full force and effect a certain policy of insurance, policy number 5780826 (the

"Policy"), issued to Plaintiff by Defendant.  A true and correct copy of the Policy is attached

hereto as Exhibit "A".

    5.    Under the terms of the Policy, Defendant insured Plaintiff against certain losses to

Plaintiff's property located at 42 Star Island Drive, Miami Beach, Florida, 33139 ("the

property").

6.      At all times material hereto, Plaintiff, as the owner of the property, had an "insurable interest" therein as defined under §627.405 Fla. Stat.; to wit: an actual, lawful, and substantial economic interest in the safety or preservation of the property from loss, destruction, or pecuniary damage or impairment.

7.      Under the terms of the policy, Defendant is obligated to pay insurance benefits for covered losses to Plaintiff's property.

8.      On or about October 24, 2005, while the policy was in full force and effect, Plaintiff sustained a loss to the property as a result windstorm, to wit: hurricane damage to the roof, building, appurtenant structures, and contents on the residence premises, causing property, wind and water damage to the property ("the loss").

9.      Defendant assigned claim number 276650 to the loss.

10.     Defendant investigated the loss and acknowledged coverage for the loss in an amount unilaterally determined by Defendant to be the total amount of the loss.

11.     Plaintiff invoked the appraisal process prior to the filing of Plaintiff's Complaint.

12.     On April 9, 2010, by way of e-mail correspondence to Plaintiff, Defendant agreed, unconditionally, to submit to appraisal the above-referenced claim, and identified therein its appraiser. Please refer to Exhibit "B", attached hereto.

13.     Defendant's above-referenced, April 9, 2010 written agreement to submit this claim to appraisal makes no reference therein to any condition upon which Citizens predicated its decision to submit this claim to appraisal.

14.     Thereafter, Plaintiff received via U.S. Mail a copy of Defendant's Memorandum of Appraisal dated April 9, 2010, sent by Defendant to the Appraisal Panel. Please refer to Exhibit "C", attached hereto.

Exhibit "C"

15.    Defendant's April 9, 2010 Memorandum of Appraisal stated it would not extend coverage for numerous areas of damages, enumerated specifically in sixty (60) paragraphs therein, because "no damages found at the time of our initial inspection and [therefore] not being considered or extended coverage for this Appraisal."

16.    Additionally, in the days following Defendant's unconditional agreement to submit this claim to the Appraisal Process, Plaintiff received by U.S. Mail correspondence from Defendant stating it would not extend coverage for numerous areas of damages, enumerated specifically in sixty (60) paragraphs therein, because "no damages found at the time of our initial inspection and [therefore] not being considered or extended coverage for this Appraisal."

17.    On July 1, 2010, Plaintiff sent to Defendant and the Appraisal Panel its written response in opposition to Defendant's Memorandum of Appraisal, stating that "there [was] no agreement by the insured to exclude any items of damage whatsoever from the appraisal process, notwithstanding Shafter Nave's discussion of Citizens' purported position as to the items of damage enumerated in his April 9, 2010 Memorandum of Appraisal." Please refer to Exhibit "D", attached hereto.

18.    Plaintiff's above-referenced, July 1, 2010 correspondence advised also that "under Florida law . . . 'causation is a coverage question for the court when an insurer wholly denies that there is a covered loss and an amount-of-loss question for the appraisal panel when an insurer admits that there is covered loss, the amount of which is disputed'", citing Johnson v. Nationwide Mutual Insurance Company, 828 So.2d 1021 (Fla. 2002), and that, "in the claim at issue in this appraisal, there is no dispute that Citizens has not wholly denied that there is a covered loss."

19.    On November 19, 2010, the appraisal process was completed, and, after due consideration of Defendant's Memorandum of Appraisal and Plaintiff's written opposition to same, the Appraisal Panel entered an Appraisal Award in the total amount of $377,831.08, accompanied by an estimate of damages corresponding to the Appraisal Award entered. Plaintiff does not possess a copy of the Appraisal Award estimate of damages corresponding to the Appraisal Award, but Defendant is in possession of same. The Appraisal Award is attached hereto as Exhibit "E".

20.    On January 18, 2011, Defendant sent correspondence to Plaintiff stating that the total amount of $195,073.73 would be deducted from the Appraisal Award payment based upon its April 9, 2010 Memorandum of Appraisal. Please refer to Exhibit "F", attached hereto.

21.    On January 19, 2011, Defendant issued an Appraisal Award payment in the total amount of $102,024.16, after application of the policy deductible amount of $82,550.00. Please refer to Exhibit "G", attached hereto.

22.    While Defendant predicates its $195,073.73 deduction upon its assertion that "no damages found at the time of our initial inspection and [therefore] not being considered or extended coverage for this Appraisal", Defendant possess neither photographic, nor video, nor any other evidence of non-damage to any of the areas and items of damages it excluded from its payment of the Appraisal Award.

23.    Under Florida law, "causation is a coverage question for the court when an insurer wholly denies that there is a covered loss and an amount-of-loss question for the appraisal panel when an insurer admits that there is covered loss, the amount of which is disputed." Johnson v. Nationwide Mutual Insurance Company, 828 So.2d 1021 (Fla. 2002).

**CITIZENS PROPERTY INSURANCE CORPORATION**
2101 MARYLAND CIRCLE
TALLAHASSEE, FLORIDA 32303-1001

TELEPHONE: (850) 504-4300   FAX: (850) 575-1879



**CITIZENS**
PROPERTY INSURANCE CORPORATION

March 3, 2010

This is a true and correct certified copy of the Declaration page and applicable forms for **Jeanette Branam**, Policy Number **5780826.**

Signed: _Florence B. Dickinson_
State of Florida
**County of Leon**

With respect to the above:

The above named signatory has sworn to and subscribed before me this **3rd** day of **March**, 2010 by **Florence B. Dickinson**, the information contained within this document is accurate and true. The above signatory is personally known to me **Amanda Collier.**

_Amanda Collier_
Signature of Notary

Notary Public State of Florida
Amanda Collier
My Commission DD528305
Expires 03/07/2010

Print, Type or Stamp Name of Notary

James R. Malone, Chairman, Collier County
William P. Corry, Indian River County • Carol Everhart, Pinellas County • Earl Horton, Pinellas County
Sherrill W. Hudson, Miami-Dade County • Allan Katz, Leon County • Carlos Lacasa, Miami-Dade County
Thomas Lynch, Palm Beach County • Scott Wallace, President/CEO & Executive Director

Part 2: THIS AMENDED DECLARATI      AGE, WITH POLICY PROVISIONS - PART 1 AND I      ORSEMENTS, IF ANY ISSUED TO FORM
A PART THEREOF, COMPLETE The BELOW NUMBERED CITIZENS PROPERTY INSU    NCE CORPORATION POLICY.

## CITIZENS PROP      TY INSURANCE CORPORATION, V      D ONLY POLICY

7077 Bonneval Road – Suite 500, Jacksonville, Florida 32216-6064



INSURED NAME AND ADDRESS
BRANAM, JEANNETTE
42 STAR ISLAND DR
MIAMI BEACH, FL  33139

**THIS IS AN AMENDED**

CHANGE NO.  1          DWELLING

THIS CHANGE IS EFFECTIVE  6/03/200!

POLICY TERM 6/03/2005  TO 6/03/2006     AT 12:01 A.M. (EST)   CITIZENS POLICY NO. 5780826
INCEPTION DATE   EXPIRATION DATE   **THIS IS YOUR POLICY DECLARATION PAGE**          PAGE

| Item No. | Amount of Insurance Building | Contents | Percent of Coinsurance Applicable | DEDUCTIBLES Hurricane/Other Wind | Territory | Premium | Factor |
|---|---|---|---|---|---|---|---|

\* THIS STATEMENT OF COVERAGE GIVES THE STATUS OF YOUR POLICY AFTER THE RECENT CHANGE(S).
NO ADDITIONAL OR RETURN PREMIUM RESULTED FROM THIS CHANGE(S)

| 1 * | 1,451,000 | 725,500 | | 72,550/500 | T-22 | 17,518 | |

The premium for this item is based on the housing characteristics listed below:

THREE STORY MASONRY 1 UNIT DWELLING LOC:
42 STAR ISLAND DR MIAMI BEACH,   DADE   FL  33139-5146

3 story, masonry, hip roof, roof covering: Non-FBC Equivalent, Roof Deck
Attachment-A, roof wall connection: Toe-Nails and Year Built Verified: No

If the above characteristics do not accurately describe your dwelling, contact your agent

| 2 * | 200,000 | 0 | | 10,000/500 | T-22 | 1,934 | |

The premium for this item is based on the housing characteristics listed below:

TWO STORY MASONRY GUEST HOUSE
2 story, masonry, hip roof, roof covering: Non-FBC Equivalent, Roof Deck
Attachment-A, roof wall connection: Toe-Nails and Year Built Verified: No

If the above characteristics do not accurately describe your dwelling, contact your agent

Fungi (Mold) Increased Limit: $50,000     Premium $46

P - I

| TOTAL AMOUNT OF COVERAGE | ACTUAL PREMIUM | PREMIUM SURCHARGES | TOTAL PREMIUM |
|---|---|---|---|
| | | Florida Hurricane Cat Fund | |
| $ | 19,452.00 | $ .00 | $ |
| 2,376,500 | Tax-Exempt Sur   341.00 | Reins/Cat Financing $ 2,925.00 | 22,764.00 |

Subject to Form No(s):
CIT DW2 07 04   CIT W03 33 07 04

Mortgagee/Loss Payee:
\* COUNTRYWIDE HOME LOANS INC
ISAOA/ATIMA
PO BOX 10212
VAN NUYS, CA  91410-0212

Agent:  SUMMIT GLOBAL PARTNERS 1875     Payor: INSURED
OF FLORIDA INC
201 ALHAMBRA CIRCLE,                Exhibit "C"
SUITE 600

# CITIZENS PROPERTY INSURANCE CORPORATION

# DWELLING

# WIND ONLY POLICY



**CITIZENS**
PROPERTY INSURANCE CORPORATION

**CIT DW2 07/04**

Exhibit "C"

Citizens Property Insurance Corporation                    Dwelling Wind Only Policy CIT DW2

## Table of Contents

### GENERAL

Dwelling Policy                                          2
Insuring Agreement                                      3
Definition                                              3

### COVERED PROPERTY

Dwelling and Mobile Home Coverage                       4
Coverage B                                              5
Personal Property Coverage                              5
Building Additions Alterations Coverage                 5
Unit Owners Coverage                                    6

### PROPERTY NOT COVERED

Property Not Covered                                    6

### OTHER COVERAGES

Debris Removal                                          9
Loss of Use                                             9
Reasonable Repairs                                      10
Property Removed                                        10
Glass or Safety Glazing Materials                       10
Ordinance or Law                                        11
Loss Assessment Coverage                                12
"Fungi," Wet or Dry Rot, Yeast or Bacteria              12

### PERILS INSURED AGAINST                               13

### GENERAL EXCLUSIONS

Loss to the Interior of Building                         14
Ordinance or Law                                        14
Coastal Construction Control Line                        14
Earth Movement                                          14
Water Damage                                            14
Sinkhole Collapse                                        14
Excavation and Foundation                                15
Pilings, Piers, Pipes                                    15
Power Failure                                            15
Sudden and Accidental Discharge                          15
Contraband                                               15
Neglect                                                  15
War                                                      15
Nuclear Hazard                                           15
Wear                                                     15

Inherent Vice                                            15
Rust, Smog and Other                                     15
Settling                                                 15
Birds, Vermin, Rodents                                   15
Smoke                                                    15
Discharge                                                15
Consequential Loss                                       15
Intentional Loss                                         15
Existing Damage                                          15
Fire                                                     16
Constant or Repeated Seepage                             16
"Fungi," Wet or Dry Rot, Yeast or Bacteria               16

### CONDITIONS

Policy Period                                            16
Insurable Interest and Limit of Liability                16
Concealment or Fraud                                     17
Your Duties After Loss                                   17
Loss Payment                                             17
Loss Settlement                                          17
Our Option                                               19
Insurance Under Two or More Coverages                    19
Loss to a Pair, Set of Panels                            19
Statutory Provisions                                     20
Mediation or Appraisal                                   20
Other Insurance                                          20
Subrogation                                              21
Suit Against Us                                           21
Recovered Property                                        21
Abandonment of Property                                  21
Mortgage Clause                                          21
Bailee Benefit                                           22
Cancellation of Policy                                   22
Nonrenewal of Policy                                     23
Renewal Notification                                     23
Waiver or Change of Policy Provisions                    23
Assignment                                               23
Death                                                    24
Nuclear Hazard                                           24
Inspections and Surveys                                  24
Deductible Clauses                                       24
Knowledge or Control                                     25
Condominium Individual Unit Owners                       25
Collective Owner/Undivided Share Owner                   25
Bankruptcy of an Insured                                 26

Exhibit "C"

Citizens Property Insurance Corporation         Dwelling Wind Only Policy CIT DW2

## DWELLING WIND ONLY POLICY

This policy is issued by the High Risk Account of Citizens Property Insurance Corporation ("Corporation") under the provisions of the enabling statute creating the Corporation and the High Risk Account, Section 627.351(6), Florida Statutes.

Insurance is provided only (1) against the perils of hurricane, other windstorm, or hail as defined in the policy, (2) with respect to those items specifically described and for which a specific amount of insurance is shown in the Declarations, and (3) for the policy term specified in the Declaration; and, unless otherwise provided, all conditions and provisions of the policy forms and endorsements to which the Declaration is attached shall apply separately to each item covered.

**"THIS IS A POLICY LIMITED TO HURRICANE, OTHER WINDSTORM OR HAIL. IT DOES NOT PROVIDE FLOOD, STORM SURGE OR WAVE WASH COVERAGE. CONSULT YOUR AGENT FOR AVAILABILITY OF FLOOD COVERAGE."**

**"COINSURANCE CONTRACT. THE RATE CHARGED IN THIS POLICY IS BASED UPON THE USE OF THE COINSURANCE CLAUSE ATTACHED TO THIS POLICY WITH THE CONSENT OF THE INSURED."**

**Section 627.351(6), Florida Statutes provides as follows:**

"The policies issued by the corporation must provide that, if the corporation or the market assistance plan obtains an offer from an authorized insurer to cover the risk at its approved rates, the risk is no longer eligible for renewal through the corporation."

"Corporation policies and applications must include a notice that the corporation policy could, under this section, be replaced with a policy issued by an authorized insurer that does not provide coverage identical to the coverage provided by the corporation. The notice shall also specify that acceptance of corporation coverage creates a conclusive presumption that the applicant or policyholder is aware of this potential."

Exhibit "C"

Citizens Property Insurance Corporation | Dwelling Wind Only Policy CIT DW2

## AGREEMENT

**We will provide** the insurance described in this policy in return for the premium, and compliance with, all applicable provisions of this policy for a term specified from the inception date shown at 12:01 A.M. (Standard time) to the expiration date shown at 12:01 A.M. (Standard time), shown on the Declarations form.

## DEFINITIONS

In this policy "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We", "us" and "our" refer to the Corporation providing this insurance. In addition, certain words and phrases are defined as follows:

1. "Described Location" means:
   a. The "residence premises".
2. "Residence premises" means:
   a. The dwelling and grounds; or
   b. the structure and grounds: or
   c. the unit; or
   d. that part of any other building; or
   e. the "mobile home," when:
      (1) described as a "mobile home" on land owned or leased by you; or
      (2) Other Structures described in the Declarations when located on the premises of a "mobile home";

   Used principally for dwelling purposes and which is shown as the "property address" in the Declarations.
3. "Business" includes trade, profession or occupation.
4. "Mobile home" means:
   a. A building which satisfies the National Mobile Homes Construction and Safety Standards, as presently existing or hereafter amended, or

the American Society of Civil Engineers Standard ANSI/ASCE 7-88, promulgated in each instance by the Department of Housing and Urban Development, administered in the State of Florida by the Florida Department of Highway Safety and Motor Vehicles (F.S. Chapter 320), or other such codes, as presently existing or hereafter amended; and
   b. A manufactured building, except those approved by the Florida Department of Community Affairs under The Manufactured Buildings Act, Chapter 553, Part IV, Florida Statutes, as presently existing or hereafter amended, as a building built in accordance with the Southern Building Code Congress International, Inc. building codes for one (1) to four (4) family dwelling(s).
5. "Perils Insured Against" means the perils of "Hurricane", "Tropical Storm" and "Other Windstorm" and "Hail" for which coverage is provided under this policy.
6. "Other Windstorm" means wind, wind gusts, tornadoes, or cyclones which results in direct physical loss or damage to property.
7. "Hurricane" means:
   a. Coverage for loss or damage caused by the peril of windstorm during a hurricane.
   b. "Windstorm" for purposes of subparagraph a. means wind, wind gusts, hail, rain, tornadoes, or cyclones caused by or resulting from a hurricane, which results in direct physical loss or damage to property.
   c. "Hurricane" for purposes of subparagraphs a. and b. means a storm system that has been declared to be a hurricane by the National Hurricane Center of the National Weather Service. The duration of the hurricane includes the time period, in Florida:
      (1) Beginning at the time a hurricane watch or hurricane warning is issued for any

Exhibit "C"

Citizens Property Insurance Corporation        Dwelling Wind Only Policy CIT DW2

part of Florida by the National Hurricane Center of the National Weather Service;

   (2) Continuing for the time period during which the hurricane conditions exist anywhere in Florida; and

   (3) Ending 72 hours following the termination of the last hurricane watch or hurricane warning issued for any part of Florida by the National Hurricane Center of the National Weather Service.

8.   "Association Owner" means:

   **a.** An "association owner" refers to an association of building owners collectively and is inclusive of the following types of organizations:

      (1) Property owner associations, homeowner associations, townhouse associations, condominium associations, apartment associations, etc.

9.   "Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, toxins, spores, scents or by-products produced or released by fungi.

10.  "Tropical Storm" means:

   **a.** Coverage for loss or damage caused by the peril of windstorm during a tropical storm.

   **b.** "Windstorm" for purposes of subparagraph a. means wind, wind gusts, hail, rain, tornadoes, or cyclones caused by or resulting from a tropical storm, which results in direct physical loss or damage to property;

   **c.** "Tropical Storm" for purposes of subparagraphs **a.** and **b.** means a storm system that has been declared to be a tropical storm by the National Hurricane Center of the National Weather Service. The duration of the tropical storm includes the time period, in Florida:

   (1) Beginning at the time a tropical storm watch or tropical storm warning is issued for any part of Florida by the National Hurricane Center of the National Weather Service;

   (2) Continuing for the time period during which the tropical storm conditions exist anywhere in Florida; and

   (3) Ending 72 hours following the termination of the last tropical storm watch or tropical storm warning issued for any part of Florida by the National Hurricane Center of the National Weather Service.

**COVERED PROPERTY**

This insurance applies to the "Described Location;" the following Coverages for which a Limit of Liability is shown in the Declarations for the "Perils Insured Against" and for which a premium is stated, and which is not excluded or limited elsewhere in this policy.

**Coverage A – Dwelling and "Mobile Home" Coverage**

We cover:

1. The dwelling or "mobile home," on the "residence premises", shown in the Declarations, including structures attached to the dwelling or "mobile home";

2. When the Covered property is described as a "mobile home" in the Declarations, we cover structures and utility tanks attached to the "mobile home" and the following and similar type items installed on a permanent basis: floor coverings, appliances, dressers and cabinets;

3. Materials and supplies within an enclosed structure on the "residence premises" used to construct, alter, or repair the dwelling or "mobile home" or other structures on the "residence premises"; and

Exhibit "C"

4. If not otherwise covered in this policy; building equipment, fixtures and outdoor equipment permanently installed and used for the service of and located on the "residence premises".

This coverage does not apply to land, including land on which the dwelling or "mobile home" is located.

**Coverage B – Other Structures**

1. We cover other structures on the "described location" set apart from the dwelling or "mobile home" by clear space. This includes structures connected to the dwelling or "mobile home" by only a fence, utility line or similar connection.

2. The limit of liability for this coverage will not be more than 10% of the limit of liability that applies to Coverage A. Use of this coverage does not reduce the Coverage A limit of liability.

When the "residence premises" is described in the Declarations as a "mobile home," 2. above is deleted and replaced with the following:

2. The limit of liability for this coverage will not be more than 10% of the limit of liability that applies to Coverage A. However, if 10% of the Coverage A limit of liability is less than $2,000, we will provide a minimum limit of $2,000 for this coverage. Use of this coverage does not reduce the Coverage A limit of liability.

This Coverage B does not:

a. Apply to land, including land on which the "described location," dwelling, "mobile home," condominium unit, real property or other structures are located;

b. Apply to a condominium unit or the "residence premises" when described in the Declarations as contents, alterations, appliances, fixtures, and improvements of a condominium unit.

**Coverage C – Personal Property Coverage**

We cover:

1. **Personal Property**

   a. **Personal property**, when the coverage is shown in the Declarations as being "contents" or "all contents", or "contents, additions or alterations" usual to the occupancy as a dwelling and owned or used by you or members of your family residing with you, while it is on the "residence premises" and within an enclosed building or structure. At your request, we will cover personal property described and shown in the Declarations within an enclosed building or structure:

   (1) While it is anywhere in the world;

   (a) Our Limit of Liability for personal property located anywhere in the world is 10% of the Limit of Liability for the Personal Property Coverage or $1000, whichever is greater; and

   (b) Only for a period of 30 days from the time you remove the personal property from the Described Location.

   (2) Owned by a guest or servant while the personal property is within an enclosed building on the "residence premises".

   b. **Building Additions and Alterations.** If you are a tenant residing in a building described in the Declarations, we cover under Personal Property Coverage C, the building improvements or installations, made or acquired at your expense, to that part of the described building shown in the Declarations used exclusively by you. The Limit of Liability for this coverage will not exceed 10% of the Limit of Liability that applies to Personal Property Coverage C as shown in the Declarations.

   This coverage is additional insurance.

2. **Condominium Unit Owners Coverage**

When the coverage is shown in the Declarations as being "CONTENTS, ALTERATIONS, APPLIANCES, FIXTURES, and IMPROVEMENTS" of a condominium unit, **we cover** for direct physical loss caused by the Perils Insured Against:

a. Personal Property – that property described under Personal Property Coverage which is contained within the enclosed "residence premises"; and personal property while it is anywhere in the world, subject to the limitations set forth in paragraph 1.a.(1)(a) and (b) of Coverage C – Personal Property.

b. The following unit owner building items as described:

   (1) The alterations, appliances, fixtures and improvements which are part of the building contained within the "residence premises";

   (2) Items of real property which pertain exclusively to the "residence premises";

   (3) Property which is your insurance responsibility under an agreement between you and an "association owner."

   However, we **do not cover** structures:

   (1) Used in whole or in part for "business" purposes;

   (2) Rented or held for rental to any person not a tenant of the "residence premises", unless used solely as a private garage.

c. This policy of insurance does not cover any loss incurred by or assessed against an insured(s) as a direct result of a deductible incurred by or applied to the "association owner", without right of subrogation against us.

**PROPERTY NOT COVERED**

1. **We do not cover:**

   a. Articles separately described and specifically insured, regardless of the limit for which they are insured, in this or other insurance.

   b. The following personal property to the extent that the loss to any one or more of such subcategory **(1)** through **(8)** below, exceeds, individually or in total, the special limit for each numbered subcategory below.

   These special limits do not increase the Coverage C limit of liability. The special limit for each numbered subcategory below is the total limit for each loss for all property in that subcategory.

   (1) $200 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum other than platinumware, coins, medals, script, stored value cards and smart cards.

   (2) $1,500 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

   This limit includes the cost to research, replace or restore the information from the lost or damaged material.

   (3) $1,500 on watercraft of all types, including their trailers, furnishings, equipment and outboard engines or motors, when the watercraft are contained within an enclosed building on the "residence premises.

   (4) $1,500 on trailers or semitrailers not used with watercraft and not used for business

purposes, when these trailers or semitrailers are contained within an enclosed building on the "residence premises.

(5) $2,500 on property contained within an enclosed building on the "residence premises," used primarily for "business" purposes.

(6) $500 on property, away from the "residence premises" contained within an enclosed building, used primarily for "business" purposes. However, this limit does not apply to loss to electronic apparatus and other property described in subcategories (7) and (8) below.

(7) $1,500 on electronic apparatus and accessories, while in or upon a motor vehicle, but only if the apparatus is equipped to be operated by the power from the motor vehicle electrical system while still capable of being operated by other power sources.

Accessories include antennas, tapes, wires, records, discs, or other media that can be used with any apparatus described in this subcategory (7).

(8) $1,500 on electronic apparatus and accessories contained within an enclosed building, used primarily for "business" while away from the "described location" and not in a "motor vehicle." The apparatus must be equipped to be operated by power from the motor vehicle's electrical system while still being capable of being operated by other power sources.

Accessories include antennas, tapes, wires, records, discs, or other media that can be used with any apparatus described in this subcategory (8).

These limits do not increase the Coverage C, Personal Property Limit of Liability.

c. Animals, birds or fish;

d. Aircraft and parts. Aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo;

e. Motor vehicles or all other motorized land conveyances; trailers on wheels. This includes:

(1) Their equipment and accessories; or

(2) Electronic apparatus that is designed to be operated solely by use of the power from the electrical system of motor vehicles or all other motorized land conveyances. Electronic apparatus includes:

(a) Accessories or antennas; or

(b) Tapes, wires, records, discs or other media for use with any electronic apparatus described in this item g.

The exclusion of property described in e. (1) and e. (2) above, applies only while the property is in or upon the vehicle or conveyance.

We do cover vehicles or conveyances not subject to motor vehicle registration on the Described Location which are:

(1) Contained within an enclosed structure; and

(2) Used to service an "insured's" residence; or

(3) Designed for assisting the handicapped.

f. Watercraft and their furnishings.

This Property Not Covered does not apply to the special limit provided in Property Not Covered b.(3).

g. Data, including data stored in:

**(1)** Books of account, card index systems, drawings or other paper records; or

**(2)** Electronic data processing tapes, wires, records, drums, cells, discs, magnetic recording, storage or other software media.

**(3)** Computers and related equipment.

However, **we do cover** up to $1,000 under item **g. (2)** and **g.(3)** the cost of blank recording or storage media, and of prerecorded computer programs available in the retail market.

This Limit does not increase the Coverage **C** Limit of Liability.

**h.** Business property;

This Property Not Covered does not apply to the special limit in Property Not Covered **b.(5), b.(6), b.(7)** and **b.(8).**

**i.** Credit cards or fund transfer cards;

**j.** Personal property while airborne, waterborne or in transit;

**k.** Paint or waterproof material, including stain, applied to the exterior of any building or structure;

**l.** Pilings, piers, wharves, retaining walls, seawalls, bulkheads, beach or diving platforms or appurtenances, docks or boathouses; however **we do cover** pilings that are part of the covered property for that portion of the piling which is above the undersurface of the basement, if there is a basement, or above the low water mark if located in whole or in part over water;

**m.** Trees, shrubs, plants, flowers, or lawns;

**n.** Windmills, wind pumps or their towers, or smokestacks;

**o.** Awnings;

**p.** Steeples and fountains;

**q.** Grain, hay, straw and other crops, crop silos or their contents;

**r.** Bridges, boardwalks, trestles, catwalks, dune walks, ramps, roadways, walks, decks and patios and similar structures, or other paved or graveled surfaces, whether or not attached to the building;

However, **we do cover** ramps, walks, decks and patios attached to covered property described in Coverage **A** and Coverage **B.**

**s.** Amusement equipment;

**t.** Fabric windscreens on fences;

**u.** Any structure or attachment, whether attached or separate from the covered building, where that structure's roof coverings are of thatch, lattice, or slats and similar material; or where that structure's exterior wall coverings are of thatch, lattice, or slats and similar material, and personal property contained within or on these structures;

**v.** Slat houses, chickees, tiki huts, gazebos and pergolas or similar structures and personal property contained within, or on these structures;

**w.** Signs, radio or television antennas or aerials, satellite dishes (including lead-in wiring, masts or towers and their supports), and utility poles including light fixtures;

However, **we do cover** solar paneling and other similar water heating and electrical apparatus when:

**(1)** outside the building (including lead-in pipes, wiring, masts or towers and their supports),

**(2)** permanently installed,

**(3)** located on the "residence premises"; and

**(4)** used for the service of the covered property.

**x.** Land, including land on which the other structures are located.

y.   Any structure, including the personal property contained within or on the structure, that is located in whole or in part over water unless it is described as a separate items and is listed on the Declarations and a Limit of Liability is shown in the Declarations.

z.   Any structure(s), property, or contents regardless of whether it is described as separate and specific item(s) in the Declarations and a Limit of Liability is shown in the Declarations when:

   (1)  Rented or held for rental to any person not a tenant of the dwelling, unless used solely as private garage; or

   (2)  Not covered as explained in other sections of this policy.

**OTHER COVERAGES**

1.   **Debris Removal.** We will pay your reasonable expense for the removal of:

   a.   Debris of covered property if the "Perils Insured Against," that applies to the damaged property, causes the loss.

   This expense is included in the Limit of Liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the Limit of Liability for the damaged property, an additional 5% of that Limit of Liability is available for debris removal expense.

2.   **Loss of Use.** If a covered loss to property described in Coverage A, Coverage B or Coverage C section of this policy, by the "Perils Insured Against" makes that part of the premises described in the Declarations, where you reside not fit to live in, **we cover** the:

   a.   Additional Living Expense, meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

   (1)  You may use up to 10% of:

      (a)  The Coverage **A** Limit of Liability, or where there is no Coverage **A**;

      (b)  The Personal Property Coverage **C** Limit of Liability.

   (2)  When the "Described Location" is described in the Declarations as contents, alterations, appliances, fixtures and improvements of condominium unit:

      (a)  You may use up to 20% of the Coverage **C** Limit of Liability.

   (3)  Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere and for not more than a period of 365 consecutive days beginning on the date of the loss occurrence.

   b.   Fair Rental Value, meaning the fair rental value of that part of the "residence premises" rented to others or held for rental by you less any expenses that do not continue while the premise is not fit to live in.

   (1)  You may use up to 10% of:

      (a)  The Coverage **A** Limit of Liability, or where there is no Coverage **A**;

      (b)  The Personal Property Coverage **C** Limit of Liability.

   (2)  Payment will be for the shortest time required to repair or replace that part of the premises rented or held for rental and for not more than a period of 365 consecutive days beginning on the date of the loss occurrence.

   c.   If a civil authority prohibits you from use of your "residence premises" as a result of direct damage to a neighboring premises by the "Perils Insured Against," we cover the Additional Living Expense and Fair Rental

Exhibit "C"

Citizens Property Insurance Corporation

Dwelling Wind Only Policy CIT DW2

Value loss as provided under **2.** above for a period not exceeding two consecutive weeks.

**d.** This extension of coverage shall not apply to loss resulting from damage to, or destruction of buildings or structures used in whole or in part for commercial, manufacturing or farming purposes, or structures (other than structures used for private garage purposes) which are rented or leased in whole or in part, or held for such rental or lease, to other than a tenant of the described dwelling or "mobile home."

**e.** Use of this Loss of Use coverage does not reduce the Coverage **A**, Coverage **B** or Coverage **C** Limit of Liability.

**f.** The periods of time under **a.(3)**, **b.(2)** and **c.** are not limited by the expiration of this policy.

**g.** We do not cover loss or expense due to cancellation of a lease or rental agreement.

**h.** We do not cover prestorm evacuation expenses, unless a covered loss first occurs to property described in the Dwelling and "Mobile Home" Coverage **A**, or Personal Property Coverage **C** section of this policy, by the "Perils Insured Against" that makes that part of the premises described in the Declarations, where you reside not fit to live in.

**3. Reasonable Repairs.** In the event that covered property is damaged by the "Perils Insured Against," we will pay the reasonable cost incurred by you for necessary measures taken solely to protect against further damage. If the measures taken involve repair to other damaged property, we will pay for those measures only if that property is covered under this policy and the damage to that property is caused by the "Perils Insured Against."

This coverage:

**a.** Does not increase the Limit of Liability that applies to the covered property.

**b.** Does not relieve you of your duties, in case of a loss to covered property, as set forth in Conditions No. **4.**, Your Duties After Loss.

**4. Property Removed**

**a.** We insure covered property against direct loss by the "Perils Insured Against" while being removed from the described premises endangered by the "Perils Insured Against," and for not more than five (5) days while removed. This coverage does not change the Limit of Liability that applies to the property being removed.

**b.** We insure covered property against direct loss by the "Perils Insured Against" while being removed from the described premises endangered by the "Perils Insured Against," and for not more than one hundred-eighty (180) consecutive days from the date of the loss occurrence, while removed. This coverage does not change the Limit of Liability that applies to the property being removed.

**c.** When this insurance applies to a mobile home described in the Declarations page, if at any time the mobile home is endangered by the "Perils Insured Against" and removal is necessary to avoid damage;

  **(1)** we will pay the reasonable expense incurred by you, not to exceed $500, for the removal and return of the mobile home; and

  **(2)** no deductible applies to this expense.

**5. Glass or Safety Glazing Material**

**a.** We cover:

  **(1)** the breakage of glass or safety glazing material which is part of a covered building, storm door or storm window; and

  **(2)** the direct physical loss to covered property is caused solely by the pieces,

fragments or splinters of broken glass or safety glazing material which is part of a building, storm door or storm window;

   **(3)**  when loss in **5.a.(1)** and **5.a.(2)** above results from direct physical loss by the "Perils Insured Against."

**b.**  This coverage does not include loss to covered property which results because the glass or safety glazing material has been broken, except as provided in **5.a.(2)** above.

**c.**  Loss to glass will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

This coverage does not increase the Limit of Liability that applies to the damaged property.

**6.**  **Ordinance or Law Coverage**

**a.**  When the covered property described in the Declaration(s) applies to your:

   **(1)**  One (1) and two (2) family dwelling building owned and occupied by you that is not a mobile home or condominium unit; or

   **(2)**  Individual townhouse building unit or co-operative unit owned and occupied by you; or

   **(3)**  Structures which are located on the "residence premises" of property described in **6.a.(1)** and **6.a.(2)** above; and

      **(a)**  are described by specific and separate items on the Declarations; and

      **(b)**  a Limit of Liability for the structure is shown on the Declaration; and

      **(c)**  the structure is owned and occupied by you; and

      **(d)**  is used to service your one (1) and two (2) family dwelling; and

      **(e)**  is not otherwise excluded in other sections of your policy.

**b.**  **It is agreed that:**

   **(1)**  Loss damage by the "Perils Insured Against" to covered property or the building containing the covered property will be settled at the increased costs you incur due to the enforcement of any ordinance or law which required or regulates:

      **(a)**  The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against;

      **(b)**  The demolition and reconstruction of the undamaged part of a covered building or other structure when that building or other structure must be totally demolished because of damage by the "Perils Insured Against" to another part of that covered building or other structure; or

      **(c)**  The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by the "Perils Insured Against."

   **(2)**  This other coverage applies only to buildings owned and occupied by you; stated in **6.a.** above; and when that property in **6.a.**, above is also described in the Declarations; and

   **(3)**  The Limit if Liability for ordinance or law coverage provided by this endorsement will not exceed 25% of the:

Citizens Property Insurance Corporation                          Dwelling Wind Only Policy CIT DW2

(a) Dwelling Building Coverage Limit of Liability; or

(b) Contents, improvements, alterations and additions coverage Limit of Liability, if the insured is a co-op owner; and

(4) You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property stated in **6.a.** above, and when that property is also described in the Declarations.

(5) We do not cover:

(a) The loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

(b) The costs to comply with any ordinance or law which requires any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants on any covered building or other structure.

"Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

c. However, General Exclusions **2.**, Ordinance or Law, and General Exclusions **3.**, Coastal Construction Control Line exclusions do not apply to losses arising under this subparagraph **6.**

This is an additional amount of insurance.

**7. Loss Assessment**

a. **We will pay** up to $1,000 for your share of loss assessment, per unit, charged during the policy period against you by an "association owner," when the assessment is made as a result of direct loss to the property, owned by all members collectively, caused by the "Perils Insured Against";

b. This coverage applies only to loss assessments charged against you as owner or tenant of the "residence premises",

c. **We do not cover** loss assessments charged against you or an "association owner" by any government body;

d. The limit of $1,000 is the most we will pay with respect to any one loss, regardless of the number of assessments;

e. **Deductible** – We will pay only that part of your assessment per unit that exceeds $250. No other deductible applies to this coverage; and

f. **Condition** – Policy Period, under the section entitled **CONDITIONS**, does not apply to this coverage.

g. Policy Condition number **29.**, Collective Owner/Undivided Share Owner and Covered Property, Coverage **C** "Condominium Coverage" **2.c.**, does not apply to this number **7.**, "Loss Assessment" Coverage. This is an additional amount of insurance.

**8. "Fungi," Wet Or Dry Rot, Yeast Or Bacteria**

a. We will pay up to $10,000 for:

(1) The total of all loss payable under this policy caused by "fungi," wet or dry rot, yeast or bacteria;

(2) The cost to remove "fungi," wet or dry rot, yeast or bacteria from property covered under this policy;

Citizens Property Insurance Corporation

Dwelling Wind Only Policy CIT DW2

(3) The cost to tear out and replace any part of the building or other covered property as needed to gain access to the "fungi," wet or dry rot, yeast or bacteria; and

(4) The cost of testing of air or property to confirm the absence, presence or level of "fungi," wet or dry rot, yeast or bacteria whether performed prior to, during or after removal, repair, restoration or replacement. The cost of such testing will be provided only to the extent that there is a reason to believe that there is the presence of "fungi," wet or dry rot, yeast or bacteria.

**b.** The coverage described in **a.** only applies when such loss or costs are a result of the "Perils Insured Against" that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at and after the time the "Perils Insured Against" occurred.

**c.** $10,000 is the most we will pay for the total of all loss or costs payable under this policy, regardless of the:

(1) Number of locations insured; or

(2) Number of occurrences or claims made; or

(3) Number of "insureds."

**d.** If there is covered loss or damage to covered property, not caused in whole or in part by "fungi," wet or dry rot, yeast or bacteria, loss payment will not be limited by the terms of this OTHER COVERAGE, except to the extent that "fungi," wet or dry rot, yeast or bacteria causes an increase in the loss. Any such increase in the loss will be subject to the terms of this OTHER COVERAGE.

This coverage does not increase the limit of liability applying to the damaged covered property.

**"PERILS INSURED AGAINST"**

**We insure** for direct physical loss to property described in the Covered Property Section of this policy, when such property is described in the Declarations, caused by the "Perils Insured Against" as described and limited below, unless;

**a.** coverage is limited elsewhere in this policy; or

**b.** the loss is excluded in General Exclusions.

The "Perils Insured Against" do not include:

**a.** Frost or cold weather;

**b.** Ice (other than hail), snow or sleet, whether driven by wind or not; and

**c.** Accumulation, freezing, thawing, pressure or weight of hail, ice, snow, sleet, rain, water or any other form of precipitation.

In event of a "Hurricane" or "Tropical Storm", we will pay for the following:

**a.** Loss or damage caused by rain, snow, sleet, sand or dust driven by a "hurricane" or "tropical storm" to the interior portion of your covered building or other structure; and

**b.** Loss or damage to covered personal property located in the inside of your building or structure, caused by wind driven rain, snow, sleet, sand or dust, provided that the direct force of "hurricane" or "tropical storm" damages the exterior of the building or structure, causing an opening through which the wind driven rain, snow, sleet, sand or dust entered.

In event of "Other Windstorm" or "Hail", we will pay for the following:

**a.** Loss or damage caused by wind driven rain, snow, sleet, sand or dust to the interior portion of your covered building or other structure; provided there is damage caused by "other windstorm" or "hail" to the exterior

of the building or structure, causing an opening through which the wind driven rain, snow, sleet, sand or dust entered; and

b. Loss or damage to covered personal property located in the inside of your building or other structure, caused by wind driven rain, snow, sleet, sand or dust, provided the direct force of "other windstorm" or "hail" damages the exterior of the building or other structure, causing an opening through which the wind driven rain, snow, sleet, sand or dust entered.

## GENERAL EXCLUSIONS

We do not insure for any loss caused directly or indirectly by any of the following.  Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

1. **Loss to the Interior of a Building**, or the property contained in a building, caused by water, steam or other substance from sprinkler equipment, plumbing, heating, air conditioning, household appliance, sump pump, sump, or other piping, unless the equipment or piping is first damaged as a direct result of the "Perils Insured Against."

2. **Ordinance or Law**, meaning any ordinance or law:

   a. Requiring or regulating the construction, demolition, remodeling , renovation or repair of property, including removal of any resulting debris. This exclusion 2.a. does not apply to the amount of coverage that is provided under OTHER COVERAGES, 5., Glass or Safety Glazing Material, or 6., Ordinance or Law;

   b. The requirements of which result in a loss in value to property; or

   c. Requiring you or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants as that term is defined in Other Coverages 6.b.(5)(b).

This exclusion applies whether or not the property has been physically damaged.

3. **Coastal Construction Control Line Exclusion.** The policy **does not cover** the amount of loss, if any, in excess of the actual cost of repair or replacement of the property where said excess is due to restrictions on reconstruction of coastal dwellings and buildings located within the coastal construction code zones established pursuant to Florida Statutes 161.052 and 161.053, as presently existing or hereafter amended.

4. **Earth Movement**, meaning any loss caused by, resulting from, contributed to, or aggravated by earthquake, including:

   a. Land or air shock, waves or tremors; landslide, mud flow, mudslide, sand flow, shifting sand, earth sinking, rising or shifting; and

   b. Volcanic eruption, meaning the eruption, explosion, land or air shock, waves or tremors, lava flow, ash, dust, particulate matter or effusion of a volcano; all whether before, during or after such earth movement.

5. **Water Damage**, meaning:

   a. Flood, surface water, waves, tidal water, storm surge, wave wash, or tidal wave, overflow of a body of water, or spray from any of these, whether or not driven by wind; or

   b. Water which backs up through sewers or drains, or which overflows from a sump; or

   c. Water below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

6. **Sinkhole Collapse**, meaning actual physical damage arising out of, or caused by, sudden settlement or collapse of the earth supporting such property and only when such settlement or collapse results from subterranean voids created by the action of water on limestone or similar rock formations.

Citizens Property Insurance Corporation                    Dwelling Wind Only Policy CIT DW2

7. **Excavation and Foundation Exclusion.** This policy does **not** cover: cost of excavations, grade or filling, foundations of buildings or other structures, machinery, boilers or engines where foundations are below the undersurface of the lowest basement service floor, or if there is no basement, below the surface of the ground.

8. **Pilings, Piers, Pipes, Flues and Drains Exclusion.** This policy does not cover pilings, piers, pipes, flues and drains which are underground; and pilings which are below the low water mark.

9. **Power Failure,** meaning the failure of power or other utility service if the failure takes place off the Described Location. But if the failure of power or other utility service results in a loss from the "Perils Insured Against" on the Described Location, we will pay for the loss or damage caused by the "Perils Insured Against."

10. **Sudden and Accidental Damage** from artificially generated electrical current. **We will not pay for** loss or damage caused by, or resulting from, artificially generated electrical current, including electric arcing, that disturbs electrical devices, appliances or wires including loss to a tube, transistor or similar electronic component.

11. **Contraband,** or property in the course of illegal transportation or trade.

12. **Neglect,** meaning your neglect to use all reasonable means to save and preserve property before, at and after the time of loss.

13. **War,** including the following and any consequence of any of the following:

    a. undeclared war, civil war, insurrection, rebellion, usurped power, revolution; or

    b. warlike act by a military force or military personnel; or

    c. destruction or seizure or use for a military purpose.

    Discharge of a nuclear weapon shall be deemed a warlike act even if accidental.

14. **Nuclear Hazard,** to the extent set forth in the Nuclear Hazard Clause of the Conditions.

15. **Wear,** tear, marring, deterioration, decay.

16. **Inherent vice,** defect and mechanical breakdown.

17. **Rust,** smog or other corrosion.

18. **Settling,** shrinking, bulging or expansion, including resultant cracking of pavements, patios, foundations, walls, floors, roofs or ceilings.

19. **Birds,** vermin, rodents, insects or domestic animals.

20. **Smoke** from agricultural smudging or industrial operations or sudden and accidental damage from smoke.

21. **Discharge,** dispersal, seepage, migration, release or escape of pollutants as defined in Other Coverages, 6.b.(5)(b).

22. **Consequential Losses** including but not limited to business income or business interruption. This exclusion does not apply to OTHER COVERAGES 2.

23. **Intentional Loss,** meaning any loss arising out of any act committed:

    a. By or at the direction of you or any person or organization named as an additional insured; and

    b. With the intent to cause a loss.

24. **Existing Damage.** This policy is not intended to and does not provide coverage for any claims or damages:

    a. Occurring prior to policy inception regardless of whether such damages were apparent at the time of the inception of this policy or occurring at a later date; or

    b. Arising out of workmanship, repairs and/or lack of repairs arising from damage which occurred prior to policy inception; or

    c. For any stated amount until and unless all structures whether covered by your previous policy or not have been fully and completely repaired.

Exhibit "C"

**d.** Prior to such completion of repairs, coverage will be limited to the greater of:

  **(1)** The actual cash value of the property at the time of a covered loss occurring during this policy period; or

  **(2)** The cost of repairing the property to a state at which it existed at the time of a covered loss, provided that such repairs have been made.

**25.** Fire, lightning, vehicular damage, aircraft damage, riot, explosion or theft.

**26. Constant or repeated seepage** or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless:

  **a.** Such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all insureds; and

  **b.** Is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure; and

  **c.** The damage from the constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor is a direct result of the "Perils Insured Against."

**27. "Fungi," Wet Or Dry Rot, Yeast, Or Bacteria,** meaning the presence, growth, proliferation, spread or any activity of "fungi," wet or dry rot, yeast, or bacteria.

This Exclusion does not apply to the extent . coverage is provided for in the "Fungi," Wet Or Dry Rot, Yeast Or Bacteria coverage under OTHER COVERAGES 8. with respect to loss caused by the "Perils Insured Against."

Direct loss by the "Perils Insured Against" resulting from "fungi," wet or dry rot, yeast or bacteria is covered.

**28.** We do not insure for loss to property described in Coverage **A** caused by any of the following. However, any ensuing loss to property described in Coverage **A** and caused by the "Perils Insured Against," which is not otherwise excluded or excepted in this policy is covered.

  **a. Weather Conditions.** However, this exclusion only applies if weather conditions other than the "Perils Insured Against" contribute in any way with a cause or event excluded in General Exclusions above, to produce the loss;

  **b. Acts or decisions,** including the failure to act or decide, of any person, group, organization or governmental body;

  **c. Faulty, inadequate or defective:**

    **(1)** planning, zoning, development, surveying, siting;

    **(2)** design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

    **(3)** materials used in repair, construction, renovation or remodeling; or

    **(4)** maintenance of part or all of any property whether on or off the "residence premises."

## CONDITIONS

**1. Policy Period.** This policy applies only to loss which occurs during the policy period.

**2. Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we shall not be liable in any one loss:

  **a.** For an amount greater than the interest of a person insured under this policy; or

  **b.** For more than the applicable Limit of Liability; or

  **c.** When a loss payee is named on the Declaration page and the loss is applicable to

Personal Property Coverage C, a loss, if any, shall be adjusted with you and shall be payable to you and the loss payee, as these interests may appear.

3. **Concealment or Fraud.** With respect to all persons insured under this policy, we provide no coverage for loss if, whether before, during or after a loss, any one or more persons insured under this policy have:

   a. Intentionally concealed or misrepresented any material fact or circumstance;

   b. Engaged in fraudulent conduct; or

   c. Made false statements relating to this insurance.

4. **Your Duties After Loss.** In case of a loss to covered property, you must:

   a. Give prompt notice to us, or your producer, who is to give immediate notice to us;

   b. Take the following steps:

      (1) Protect the property from further damage; and

      (2) Make reasonable and necessary repairs to protect the property; and

      (3) Keep an accurate record of repair expenses; and

      (4) Prepare an inventory of damaged and undamaged property showing in detail the quantity, description, actual cash value, and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory; ·

   c. As often as we reasonably require:

      (1) Show us the damaged property;

      (2) Provide us with records and documents we request and permit us to make copies; and

      (3) Submit to examinations under oath while not in the presence of any other named insureds and sign the same;

   d. Send to us, within sixty (60) days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

      (1) The time and cause of loss;

      (2) Your interest and that of all others in the covered property involved, and all liens on the covered property;

      (3) Other insurance which may cover the covered loss;

      (4) Changes in title or occupancy of the covered property during the term of the policy;

      (5) Specifications of damaged buildings and detailed repair estimates;

      (6) The inventory of damaged and undamaged personal property described in Condition number **4.b.(4)**, Your Duties After Loss;

      (7) Receipts for additional living expenses incurred.

5. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable:

   a. Twenty (20) days after we receive your proof of loss and reach written agreement with you; or

   b. Sixty (60) days after we receive your proof of loss and:

      (1) There is an entry of a final judgment; or

      (2) There is a filing of an appraisal award or a mediation settlement with us.

   c. If you name an insurance trustee, we will adjust losses with you, but we will pay the insurance trustee. If we pay the trustee, the payments will satisfy your claims against us.

6. **Loss Settlement.** Covered property losses are settled after application of the deductible, as follows:

Exhibit "C"

**a.** Personal Property:

    **(1)** At actual cash value at the time of loss, but not more than the amount necessary to repair or replace.

**b.** Carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings:

    **(1)** At actual cash value at the time of loss, but not more than the amount necessary to repair or replace.

**c.** "Mobile.Home" Buildings -- Buildings and structures under Coverage **A**, Coverage **B** when the building is described as a "mobile home" and, if any, Other Structures described in the Declarations and located on the residence premises of the "mobile home", subject to the following:

    **(1)** The actual cash value of that part of the "mobile home," Coverage **A**, Coverage **B** or Other Structures described in the Declarations and located on the premises of a "mobile home" damaged; or

    **(2)** That portion of the cost to repair or replace, with material of like kind or quality, with deduction for depreciation, of that part of the building damaged; or

    **(3)** The "mobile home" Coverage **A** Limit of Liability described in the Declarations page(s), when your "mobile home" is totally destroyed by the "Perils Insured Against." This subsection (3) does not apply to Coverage **B** or Other Structures, personal property or other covered property described in the Declarations and located on the premises of a "mobile home."

**d.** Condominium Unit Owner - Condominium Unit Owner building items described in the Declarations as "CONTENTS, ALTERATIONS, APPLIANCES, FIXTURES and IMPROVEMENTS" of Condominium Unit Owner Coverage **C** building improvements or installations, or Personal Property Coverage **C** building improvements or installations, made or acquired at your expense to that part of the building described in the Declarations;

    **(1)** If the damage is repaired or replaced within a reasonable time, at the actual cost to repair or replace;

    **(2)** If the damage is not repaired or replaced within a reasonable time, at the actual cash value but not more than the amount required to repair or replace.

**e.** Dwelling Buildings – Buildings and structures under Coverage **A**, Coverage **B**, and if any, Other Structures described in the Declarations, other than "mobile homes" and other structures located on the premises of a "mobile home."

At replacement cost without deduction for depreciation, subject to the following:

    **(1)** If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, after application of deductible and without deduction for depreciation, but not more than the least of the following amounts:

        **(a)** the Limit of Liability under this policy that applies to the building;

        **(b)** the replacement cost of that part of the building damaged for like construction and use on the same premises; or

        **(c)** the necessary amount actually spent to repair or replace the damaged building.

Exhibit "C"

(2) If at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the Limit of Liability under this policy that applies to the building:

(a) the actual cash value of that part of the building damaged; or

(b) that proportion of the cost to repair or replace, after application of deductible without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

(3) To determine the amount of insurance required to equal 80% of the full replacement cost of the building immediately before the loss, do not include the value of:

(a) excavations, foundations, piers or any supports which are below the undersurface of the lowest basement floor;

(b) those supports in (a) above which are below the surface of the ground inside the foundation walls, if there is no basement; and

(c) drains.

(4) We will pay no more than the actual cash value of the damage; until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss according to the provisions of e.(1) and e.(2) above.

However, if the cost to repair or replace the damage is both:

(a) less than 5% of the amount of insurance in this policy on the building; and

(b) less than $2500.

We will settle the loss according to the provisions of e.(1) and e.(2) above, whether or not actual repair or replacement is complete.

(5) You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to buildings on an actual cash value basis. You may then make claim within 180 consecutive days after loss for any additional liability according to Condition 6.e., Loss Settlement, Dwelling Buildings.

f. **Our Option.** If we give you written notice within thirty (30) days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with like property.

7. **Insurance Under Two or More Coverages.** If two or more of this policy's coverages apply to the same loss or damage, **we will not pay** more than the actual amount of the loss or damage.

8. **Loss to a Pair, Set or Panels.** In case of loss to a pair, set or panels we may elect to:

a. Repair or replace any part to restore the pair, set or panel to its value before the loss; or

b. Pay the difference between the Actual Cash Value of the property before and after the loss.

c. Pay in any loss involving part of a series of pieces or panels:

(1) The reasonable cost of repairing or replacing the damaged part to match the remainder as closely as possible; or

(2) The reasonable cost of providing an acceptable decorative effect or utilization

Exhibit "C"

as circumstances may warrant. However, we do not guarantee the availability of replacements, and we will not be liable, in the event of damage to or loss of a part, for the value, repair or replacement of the entire series of pieces or panels.

9. **Statutory Provisions.** Any terms of this policy which are in conflict with the statutes of the State wherein the property is located are amended to conform to such statutes, except that in cases of conflict with applicable Federal law or regulation, such Federal law or regulation shall control the terms of the policy.

10. **Mediation or Appraisal.** If you and we fail to agree on the amount of loss, either one of us may:

    a. Demand a mediation of the loss in accordance with the rules established by the Florida Department of Financial Services. The loss amount must be $500 or more, prior to application of the deductible, or there must be a difference of $500 or more between the loss settlement amount we offer and the loss settlement amount that you request. The settlement in the course of the mediation is binding only if both parties agree, in writing, on a settlement, and you have not rescinded the settlement within three (3) business days after reaching settlement. You may not rescind the settlement after cashing or depositing the settlement check or draft we provided to you.

    We will pay the cost of conducting any mediation conference except when you fail to appear at a conference. That conference will then be rescheduled upon your payment of the mediator's fee for that rescheduled conference. However, if we fail to appear at a mediation conference, we will pay your actual cash expenses that you incur in attending the conference and also pay the mediator's fee for the rescheduled conference.

    b. Demand an appraisal of the loss. In this event, each party will choose a competent appraiser within twenty (20) days after receiving a written request from the other. The two appraisers will choose a competent and independent umpire. If they cannot agree upon an umpire within fifteen (15) days, you or we may request the choice be made by a judge of a court of record in the state where the Described Location is located. The appraisers will separately set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of the loss.

    Each party will:

      (1) Pay its own appraiser; and

      (2) Bear the other expenses of the appraisal and umpire equally.

    If, however, we demanded the mediation and either party rejects the mediation results, you are not required to submit to, or participate in, any appraisal of the loss as a precondition to action against us for failure to pay the loss.

11. **Other Insurance**

    a. If a loss covered by this policy is also covered by other insurance, we will pay only the proportion of the loss that the Limit of Liability that applies under this policy bears to the total amount of insurance covering the loss.

    b. If a loss covered by this policy is also covered by other insurance, except insurance in the name of an association owner we will pay only the proportion of the loss that the Limit of Liability that applies under this policy bears to the total amount of insurance covering the loss.

    c. When the Coverage is shown in the Declarations as being "CONTENTS,

Exhibit "C"

ALTERATIONS, APPLIANCES, FIXTURES, AND IMPROVEMENTS" of a condominium unit, the following applies:

(1) We will not pay more than the applicable Limit of Liability if, at the time of loss, there is other insurance in the name of an "association owner" covering the same property covered by this property. This insurance will be excess over the amount recoverable under such other insurance, and

(2) We waive any rights of recovery against the "association owner."

**d.** In no event will this policy pay policy limits for total loss to a building(s) or structure(s) where another policy covering the same property for the same loss, has or will pay, its property limits for total damage or destruction of the building or structure.

12. **Subrogation.** An "insured" may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

However, we waive any rights of recovery against the "association owner" of the condominium where the "residence premises" is located.

If an assignment is sought, an "insured" must sign and deliver all related papers and cooperate with us.

Subrogation does not apply to damage to property of others.

13. **Suit Against Us.** No action can be brought against us unless the policy provisions have been complied with and the action is started within five (5) years from the date the loss occurs.

14. **Recovered Property.** If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you.

You must then return to us the amount we paid to you for the property. **We will pay** recovery expenses and the expenses to repair the recovered property, subject to the Limit of Liability.

15. **Abandonment of Property.** We need not accept any property abandoned by you.

16. **Mortgage Clause.** The word "mortgagee" includes trustee.

If a mortgagee is named in this policy, any loss under Dwelling and "Mobile Home" Coverage or Other Structures Coverage shall be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment shall be the same as the order of precedence of the mortgagees.

When covered property is described as a "mobile home" in the Declarations page(s), the word "mortgagee" includes trustee or lienholder.

If we deny your claim, that denial shall not apply to a valid claim of the mortgagee, if the mortgagee:

**a.** Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

**b.** Pays any premium due under this policy on demand if you have neglected to pay the premium;

**c.** Submits a signed, sworn statement of loss within sixty (60) days after receiving notice from us of your failure to do so. Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

If we decide to cancel or not to renew this policy, the mortgagee will be notified at least ten (10) days before the date cancellation or nonrenewal takes effect.

If we pay the mortgagee for any loss and deny payment to you:

21

Citizens Property Insurance Corporation                                    Dwelling Wind Only Policy CIT DW2

**a.** We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

**b.** At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we shall receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

Subrogation shall not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

**17. No Benefit to Bailee. We will not** recognize any assignment, or grant any coverage, that benefits a person or organization holding, storing or moving property for a fee, or other bailee, regardless of any other provisions in this policy.

**18. Cancellation**

**a.** You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.

**b.** When this policy has been in effect for ninety (90) days or less, we may cancel immediately if there has been a material misstatement or misrepresentation or failure to comply with underwriting requirements established by us.

**c.** We may also cancel this policy subject to the following provisions. A written cancellation notice, together with the specific reasons for cancellation, will be delivered to you, or mailed to you at your mailing address shown in the Declarations.

(1) When you have not paid the premium, we may cancel at any time by letting you know at least ten (10) days before the date cancellation takes effect.

(2) When this policy has been in effect for ninety (90) days or less, we may cancel for any reason except we may not cancel:

(a) On the basis of property insurance claims that are the result of an Act of God, unless we can demonstrate, by claims frequency or otherwise, that the insured has failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property.

Except as provided in items **18.b.,** and **c.(1)** above, we will let you know of our action at least twenty (20) days before the date cancellation takes effect.

(3) When this policy has been in effect for more than ninety (90) days, we may cancel:

(a) If there has been a material misstatement;

(b) If the risk has changed substantially since the policy was issued;

(c) In the event of failure to comply with underwriting requirements established by us within ninety (90) days of the effective date of coverage;

(d) If the cancellation is for all insureds under policies of this type for a given class of insureds;

(e) On the basis of property insurance claims that are the result of an Act of God, if we can demonstrate, by claims frequency or otherwise, that the insured has failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property;

This can be done by letting you know at least ninety (90) days before the date cancellation takes effect.

**d.** When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata

Exhibit "C"

unless subject to **18.f.** below.

e.   If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

f.   Special "Hurricane", "Other Windstorm" or "Hail" Cancellation Provisions:

   (1)  If this policy is cancelled by you, or the amount of insurance is reduced, the return premium is pro rata, if no coverage existed from June 1 to November 1 of any one (1) year policy term.

   (2)  If coverage existed at any time during the period of June 1 to November 1 the amount of premium we will return will be a percentage of the total premium. The percentage of the total premium is as follows:

**1 Year Policy**
Days Policy

| In Force | Percentage |
|----------|-----------|
| 1 to 180 | 20% |
| 181 to 210 | 15% |
| 211 to 240 | 10% |
| 241 to 270 | 7.5% |
| 271 to 300 | 5.0% |
| 301 to 330 | 2.5% |
| 331 to 365 | 0.0% |

g.   Proof of mailing will be sufficient proof of notice.

19.  **Nonrenewal.** We may elect not to renew this policy.

a.   We may do so by delivering to you or mailing to you at your mailing address shown in the Declarations, written notice, together with the specific reasons for nonrenewal, at least ninety (90) days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

b.   If we or the market assistance plan obtain an offer from an authorized insurer with rates approved by the Florida Department of Financial Services to cover your property described in the Declaration page(s), we may nonrenew your policy. Your policy may be replaced by a policy that may not provide coverage identical to the coverage provided by Citizens. Acceptance of Citizens coverage by you creates a conclusive presumption that you are aware of this potential.

However, we will not nonrenew this policy:

a.   On the basis of property insurance claims that are the result of an Act of God, unless we can demonstrate, by claims frequency or otherwise, that the insured has failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property; or

20.  **Renewal Notification.** If we elect to renew this policy, we will let you know, in writing:

a.   Of our decision to renew this policy; and

b.   The amount of renewal premium payable to us.

This notice will be delivered to you or mailed to you at your mailing address shown in the Declarations at least forty-five (45) before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

21.  **Waiver or Change of Policy Provisions.** The First Named Insured, the agent, or identified mortgagees shown in the Declarations are authorized to make changes in the terms of this policy with our consent. A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

22.  **Assignment.** Assignment of this policy will not be valid unless we give our written consent.

**23. Death.** If you die, we insure:

    **a.**   Your legal representatives but only with respect to the property of the deceased covered under the policy at the time of death;

    **b.**   With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

**24. Nuclear Hazard Clause**

    **a.**   "Nuclear Hazard" means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these;

    **b.**   Loss caused by the nuclear hazard will not be considered loss caused by the "Perils Insured Against" or otherwise, whether this Peril is specifically named in or otherwise included within the "Perils Insured Against";

    **c.**   This policy does not apply to loss caused directly or indirectly by nuclear hazard.

**25. Inspections and Surveys.** We have the right, but are not obligated to:

    **a.**   Make inspections and surveys at any time;

    **b.**   Give you reports on the conditions we find; and

    **c.**   Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

    **a.**   Are safe or healthful; or

    **b.**   Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations on our behalf.

**26. Deductible Clauses.** If loss or damage to Covered Property at a location named in the Declarations is caused by or results from the Peril of "Hurricane", the Hurricane Deductible is the only deductible that applies. If a windstorm is not declared to be a "Hurricane", and there is a loss or damage to Covered Property caused by or resulting from the Perils of "Tropical Storm," "Other Windstorm" or "Hail", the Tropical Storm, Other Windstorm or Hail Deductible will apply, subject to the following:

    **a.**   **HURRICANE DEDUCTIBLE APPLICABLE TO DWELLING AND CONTENTS, "MOBILE HOME" AND "MOBILE HOME" CONTENTS, PRIVATE APARTMENT CONTENTS AND CONDOMINIUM UNIT CONTENTS, SHOWN IN THE DECLARATIONS.**

        **We will not pay** for loss or damage in any one occurrence until the amount of loss or damage exceeds the Hurricane Deductible shown in the Declarations. **We will then pay** the amount of loss or damage in excess of the Hurricane Deductible up to the applicable Limit of Liability.

        This provision shall apply:

        **(1)**   Separately to each dwelling building and its contents, including Coverage B or to each "mobile home" and its contents, including Coverage B; and

        **(2)**   Separately to each dwelling building and its contents, including Coverage B or to each "mobile home" and its contents, including Coverage **B** if two or more dwelling buildings or "mobile homes" are covered; and

        **(3)**   Separately to the contents of each dwelling building or to each "mobile

home," if the contents of two or more dwelling buildings or "mobile homes" are covered; and

    **(4)** Separately to each other structure and its contents shown on the Declaration page(s), whether such insurance be written under a specific schedule or under a blanket form.

**b.** **"TROPICAL STORM", "OTHER WINDSTORM" OR "HAIL" DEDUCTIBLE APPLICABLE TO DWELLING AND CONTENTS, "MOBILE HOMES" AND "MOBILE HOME" CONTENTS, PRIVATE APARTMENT CONTENTS, AND CONDOMINIUM UNIT CONTENTS.**

**We will not pay** for loss or damage in any one occurrence until the amount of loss or damage exceeds the "Tropical Storm," "Other Windstorm" and "Hail" Deductible shown in the Declarations. **We will then pay** the amount of loss or damage in excess of the "Tropical Storm," "Other Windstorm" and "Hail" Deductible up to the applicable Limit of Liability.

This provision shall apply:

    **(1)** Separately to each dwelling building and its contents, including Coverage **B** or to each "mobile home" and its contents, including Coverage **B**; and

    **(2)** Separately to each dwelling building and its contents, including Coverage **B** or to each "mobile home" and its contents, including Coverage **B** if two or more dwelling buildings or "mobile homes" are covered; and

    **(3)** Separately to the contents of each dwelling building or to each "mobile home", if the contents of two or more dwelling buildings or "mobile homes" are covered; and

    **(4)** Separately to each other structure and its contents shown on the Declaration page(s), whether such insurance be written under a specific schedule or under a blanket form.

  **c.** Each deductible amount will not be less than the greater of $500 or the deductible amount shown in the Declarations.

**27. Knowledge or Control. We will not pay** for loss or damage while the chance of loss or damage is increased by any means within your knowledge or control. Any act or neglect of any person other that you beyond your direction or control will not affect this insurance. The breach of any condition of this Policy at any one or more locations will not affect coverage at any location, where, at the time of loss, the breach of condition does not exist.

**28. Condominium Individual Unit Owners.** Coverage under this policy is excess over the amount recoverable under any other policy covering the same property, without right of subrogation against the "association owner."

**29. Collective Owner/Undivided Share Owner.** This policy of insurance does not cover any loss to the "association owner" by a reason of a deductible incurred by or applied to it under other insurance covering the same loss or by reason of the failure by the "association owner" to obtain other insurance and it does not cover any loss incurred by or assessed against the individual unit owner(s) as a direct result of such deductible or such failure to obtain other insurance and neither the unit owner(s) nor the "association owner" shall have a right of subrogation against us.

Nothing in this paragraph shall limit or restrict a unit owner's right to recover up to the $1,000 loss assessment limit as described in OTHER COVERAGES, Section **7.**

Exhibit "C"

Citizens Property Insurance Corporation                                  Dwelling Wind Only Policy CIT DW2

30. **Bankruptcy of an Insured.** Bankruptcy or insolvency of a "named insured" shown in the Declarations will not relieve us of our obligations under this policy.

**IN WITNESS WHEREOF,** Citizens Property Insurance Corporation has executed and attested these presents.

*Robert L. Ricker*

**Executive Director**
**Citizens Property Insurance Corporation**

Exhibit "C"

POLICY NUMBER:

**WIND ONLY DWELLING**
**CIT W03 33 07 04**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# FUNGI, WET OR DRY ROT, YEAST OR BACTERIA
# INCREASED AMOUNT OF PROPERTY COVERAGE
### FOR USE WITH DWELLING WIND ONLY POLICY

#### SCHEDULE*

| | |
|---|---|
| The limit of liability selected applies to loss or costs payable under the "Fungi", Wet Or Dry Rot, Yeast Or Bacteria OTHER Coverage. | |
| **Property Coverages - Coverage Limit Of Liability For The OTHER Coverage "Fungi," Wet Or Dry Rot, Yeast Or Bacteria** | $ |
| *Entries may be left blank if shown elsewhere in this policy for this coverage. | |

**OTHER COVERAGES**

**Under Other Coverages 8. - "Fungi," Wet Or Dry Rot, Yeast Or Bacteria**

Paragraph a. is replaced by the following:

a. We will pay up to the amount in the Schedule for:

(1) Loss payable under this policy caused by "fungi," wet or dry rot, yeast or bacteria;

(2) The cost to remove "fungi," wet or dry rot, yeast or bacteria from property covered under this policy;

(3) The cost to tear out and replace any part of the building or other covered property as needed to gain access to the "fungi," wet or dry rot, yeast or bacteria; and

(4) The cost of testing of air or property to confirm the absence, presence or level of "fungi," wet or dry rot, yeast or bacteria whether performed prior to, during or after removal, repair, restoration or replacement. The cost of such testing will be provided only to the extent that there is a reason to believe that there is the presence of "fungi," wet or dry rot, yeast or bacteria.

Paragraph c. is replaced by the following:

c. The amount shown in the Schedule is the most we will pay for the total of all loss or costs payable under this policy regardless of the:

(1) Number of locations insured; or

(2) Number of occurrences or claims made; or

(3) Number of "insureds."

All other provisions of this policy apply.

Exhibit "C"

**Jonathan Buckland**

| | |
|---|---|
| **From:** | Shafter Nave <Shafter.Nave@citizensfla.com> |
| **Sent:** | Friday, April 09, 2010 4:15 PM |
| **To:** | Jonathan Buckland |
| **Cc:** | David Justice |
| **Subject:** | RE: JEANNETTE BRANAM Claim# 276650 |

We are reassigning this to David Justice to act as our appraiser. We feel with him being involved as our Loss Consultant he has the most current knowledge of the issues regarding this claim, and that this would also facilitate a faster resolution to this claim. Mr. Justice has already been notified of his reassignment as the Appraiser, and he should be contacting your office within the next few days. Please have your umpire list ready so that we may begin the selection process, get the Declaration of Appraisers signed, and continue moving forward with this Appraisal Process.

Thank you,

*Shafter Nave*

Disputed Claims Specialist
Citizens Property Insurance Corp.
Ph. 866-858-0649 Ext. 4160

"This email contains legally privileged and confidential information intended only for the individual or entity named within the message.  If the reader of this message is not the intended recipient, or the agent responsible to deliver it to the intended recipient, you are hereby notified that any review, dissemination, distribution or copying of this communication is prohibited.  If this communication was received in error, please notify us by reply e-mail and delete the original message."

**From:** Jonathan Buckland [mailto:jcb@bucklandlegal.com]
**Sent:** Friday, April 09, 2010 3:24 PM
**To:** Shafter Nave
**Subject:** RE: JEANNETTE BRANAM Claim# 276650

Thank you for the update, Mr. Nave.  While Mrs. Branam has been receptive to the potential of resolving this matter outside of the appraisal process, we would agree, at this juncture, that appraisal is the appropriate manner by which to resolve the ongoing disagreement over the amount of this loss, so that will be fine.  Have a nice weekend, and I look forward to hearing from you next week regarding your identification of Citizens' appraiser.

## Jonathan C. Buckland

BUCKLAND & ASSOCIATES, P.A.
1101 Brickell Avenue, Suite 1801
Miami, Florida 33131
(P) 305.400.8082
(F) 305.400.8083
(C) 786.208.6081

The contents of this e-mail message and any attachments are intended solely for the addressee(s) named in this message.  This communication is confidential, and may be subject to applicable lawyer-client and/or work product privileges.  If you are not the intended recipient of this message, or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and its attachments.  Do not deliver, distribute or copy this message and/or any attachments and if you are not the intended recipient, and do not disclose the contents or take any action in reliance upon the information contained in this communication or any attachments.

**From: Shafter Nave** [mail\_\_\_\_.iafter.Nave@citizensfla.com]
**Sent:** Friday, April 09, 2010 2:43 PM
**To:** Jonathan Buckland
**Subject:** JEANNETTE BRANAM Claim# 276650

Mr. Buckland,

I hope all is well. I have finished my review and I have weighed all the reports and documents submitted by you, the insured, the PA, our inspections and reports, as well as all prior evaluations. Although I do feel that my $50,000 New Money offer to settle this claim was in line with the actual damage, since you have rejected this offer, I am now retracting that offer and it is no longer available for consideration. I am moving this claim to Appraisal. I have submitted a request to name an appraiser to my team lead. I have also drafted a few letters regarding this appraisal, and once I receive approval for them, they will be mailed to your office. I hope to have everything completed, assigned, and mailed no later than Monday afternoon or early Tuesday morning. If there are any questions, please do not hesitate to contact me.

Thank you and have a nice weekend,

*Shafter Nave*

Disputed Claims Specialist
Citizens Property Insurance Corp.
Ph. 866-858-0649 Ext. 4160

"This email contains legally privileged and confidential information intended only for the individual or entity named within the message. If the reader of this message is not the intended recipient, or the agent responsible to deliver it to the intended recipient, you are hereby notified that any review, dissemination, distribution or copying of this communication is prohibited. If this communication was received in error, please notify us by reply e-mail and delete the original message."

**CITIZENS PROPERTY INSURAN⬝   ⬝ORPORATION**

PO BOX 19700
Jacksonville, FLORIDA 32245-9700

TELEPHONE: (866) 858-0649   FAX: (866) 574-9128



April 9, 2010

Jeanette Branam
42 Star Island Dr.
Miami Beach, FL 33139

RE:   Claim Number: 276650
      Policy Number: 5780826
      Date of Loss:   10/24/05
      Loss Location: 42 Star Island Dr. Miami Beach, FL 33139

## Memorandum of Appraisal

Dear Appraisal Panel,

As you are aware, this claim has been referred to the appraisal process to evaluate, investigate and determine the actual value for damaged item(s) for Coverage A (Dwelling) and Coverage C (Contents).

Please be advised; Citizens is unable to extend coverage for the following item(s)/area(s):

Main House –

1. Roof – No New or Wind Specific damages were found during our Re-Inspection and per the Re-inspection and Engineer Report, Full roof replacement is not warranted and will not be considered in this Appraisal; only the previous repair amounts estimated are the eligible for this Appraisal

2. Foyer/Entry – No damages found at the time of our Initial Inspection and is not being considered or extended coverage for this Appraisal

3. Foyer East – No damages found at the time of our Initial Inspection and is not being considered or extended coverage for this Appraisal

4. Foyer Entry Closet – No damages found at the time of our Initial Inspection and is not being considered or extended coverage for this Appraisal

5. Foyer Powder Room - No damages found at the time of our Initial Inspection and is not being considered or extended coverage for this Appraisal

6. Dining Room - No damages found at the time of our Initial Inspection and is not being considered or extended coverage for this Appraisal

7. Formal Dining Room – No damages found at the time of our Initial Inspection. The Custom Ceiling will also not be considered. The only item eligible for this Appraisal is the one window that was claimed as damaged and included in our Initial estimate. The amount to replace this window is in dispute.

8. Formal Living Room – No damages found at the time of our Initial Inspection, the Custom Ceiling will also not be considered for this Appraisal

9. Family Room - No damages found at the time of our Initial Inspection and is not being considered or extended coverage for this Appraisal

10. Kitchen - No damages found at the time of our Initial Inspection and no damage is being claimed in the Demand for this Appraisal

Exhibit "C"

*Exhibit "C"*

11. Pantry – No damages found at the time of our Initial Inspection and no damage is being claimed in the Demand for this Appraisal

12. Laundry - No damages found at the time of our Initial Inspection and no damage is being claimed in the Demand for this Appraisal

13. Maid's – Quarters, Bathroom, and Closet - No damages found at the time of our Initial Inspection and no damage is being claimed in the Demand for this Appraisal

14. Jonathan's Room/Library/Third Floor - No damages found at the time of our Initial Inspection, except to the Library itself. The library is the only area eligible for Appraisal.

15. Library Stairway - Seal and Paint allowed due to Continuous Walls, but no damage is being claimed in the Demand for this Appraisal

16. Stairway/Hallway(Library) - No damages found at the time of our Initial Inspection and no damage is being claimed in the Demand for this Appraisal

17. Jeff's Bedroom  – No damages found at the time of our Initial Inspection and is not being considered or extended coverage for this Appraisal

18. Jeff's Bedroom (South) - No damages found at the time of our Initial Inspection and is not being considered or extended coverage for this Appraisal

19. Jeff's Bedroom Closet - No damages found at the time of our Initial Inspection and is not being considered or extended coverage for this Appraisal

20. Bedroom 2 (Carm) – No damages found at the time of our Initial Inspection and is not being considered or extended coverage for this Appraisal

21. Bathroom (Carm) - No damages found at the time of our Initial Inspection and no damage is being claimed in the Demand for this Appraisal

22. Bath Stall (Carm) - No damages found at the time of our Initial Inspection and no damage is being claimed in the Demand for this Appraisal

23. Closet (Carm) - No damages found at the time of our Initial Inspection and no damage is being claimed in the Demand for this Appraisal

24. Guest Bedroom Upstairs - No damages found at the time of our Initial Inspection and no damage is being claimed in the Demand for this Appraisal

25. Guest Bedroom Upstairs Bath - No damages found at the time of our Initial Inspection and no damage is being claimed in the Demand for this Appraisal

26. Guest Bedroom Upstairs closet - No damages found at the time of our Initial Inspection and no damage is being claimed in the Demand for this Appraisal

27. Upstairs Stairway  - No damages found at the time of our Initial Inspection and is not being considered or extended coverage for this Appraisal

28. Stairs/Hallway #1 (Near Middle Stairs) - No damages found at the time of our Initial Inspection and is not being considered or extended coverage for this Appraisal

29. Stairs/Hallway #1 Middle Closet - No damages found at the time of our Initial Inspection and is not being considered or extended coverage for this Appraisal

30. Hallway South - No damages found at the time of our Initial Inspection and is not being considered or extended coverage for this Appraisal

31. Hallway North - No damages found at the time of our Initial Inspection and is not being considered or extended coverage for this Appraisal

32. Linen Closet/Hallway/Second Floor- No damages found at the time of our Initial Inspection and is not being considered or extended coverage for this Appraisal

33. Middle Bay Bedroom (Jeannette) - No damages found at the time of our Initial Inspection and is not being considered or extended coverage for this Appraisal

Exhibit "C"

34. Middle Bay Bedroom Closet (Jeannette) - No damages found at the time of our Initial Inspection and no damage is being claimed in the Demand for this Appraisal

35. Middle Bay Bedroom Bath (Jeannette) - No damages found at the time of our Initial Inspection and no damage is being claimed in the Demand for this Appraisal

36. Sewing Room - No damages found at the time of our Initial Inspection and no damage is being claimed in the Demand for this Appraisal

37. General Main House – The items listed in this area are not being considered or extended coverage for this Appraisal

38. Exterior – No damages found at the time of our Initial Inspection and no damage is being claimed in the Demand for this Appraisal

39. Front Elevation – No damages found at the time of our Initial Inspection and is not being considered or extended coverage for this Appraisal

40. Right Elevation – No damages found at the time of our Initial Inspection and is not being considered or extended coverage for this Appraisal

41. Left Elevation – No damages found at the time of our Initial Inspection and no damage is being claimed in the Demand for this Appraisal

42. Rear Elevation - No New Damages found during our Re-Inspection. The only item eligible for Appraisal is the coping that was written for in our Initial Inspection for possible Hurricane related Damage.

Boat House –

1. Exterior - No damages found at the time of our Initial Inspection and no damage is being claimed in the Demand for this Appraisal

2. Front Elevation – No damages found at the time of our Initial Inspection and is not being considered or extended coverage for this Appraisal

3. Right Elevation – No damages found at the time of our Initial Inspection and is not being considered or extended coverage for this Appraisal

4. Left Elevation – No damages found at the time of our Initial Inspection and no damage is being claimed in the Demand for this Appraisal

5. Rear Elevation – No damages found at the time of our Initial Inspection and is not being considered or extended coverage for this Appraisal

6. Boat House Entry – No damages found at the time of our Initial Inspection and is not being considered or extended coverage for this Appraisal

7. Boat House Downstairs – No damages found at the time of our Initial Inspection and is not being considered or extended coverage for this Appraisal

8. Boat House Bathroom – No damages found at the time of our Initial Inspection and is not being considered or extended coverage for this Appraisal

9. Boat House Upstairs – No damages found at the time of our Initial Inspection and is not being considered or extended coverage for this Appraisal

10. Boat House Upstairs Bathroom – No damages found at the time of our Initial Inspection and is not being considered or extended coverage for this Appraisal

11. Boat House – No damages found at the time of our Initial Inspection and no damage is being claimed in the Demand for this Appraisal

12. Roof Boat House – No New or Wind Specific damages were found during our Re-Inspection and per the Re-inspection and Engineer Report, Full roof replacement is not warranted and will not be considered in this Appraisal; only the previous repair amounts estimated are eligible for this Appraisal

13. General – The item listed in this area is not being considered or extended coverage for this Appraisal

Carriage House –

1. Roof - No New or Wind Specific damages were found during our Re-Inspection and per the Re-Inspection and Engineer Report, Full roof replacement is not warranted and will not be considered in this Appraisal; only the previous repair amounts estimated are eligible for this Appraisal

2. General – The item listed in this area is not being considered or extended coverage for this Appraisal

3. Exterior – No damages found at the time of our Initial Inspection and no damage is being claimed in the Demand for this Appraisal

4. Upstairs Kitchen/DiningRoom – No damages found at the time of our Initial Inspection and is not being considered or extended coverage for this Appraisal

Contents –

1. Draperies – Labor and Material - No damages found at the time of our Initial Inspection

It is Citizens position that these item(s)/area(s) listed above were **not** damaged at the time of our inspection. Citizens sent a letter stating such on 4/9/10 to the Attorney and is attached for review.

If an award is issued which includes the item(s)/area(s) listed above, the value determined by the appraisal panel for each item/area plus applicable tax and overhead and profit considerations, may be withheld from any payment issued.

Appraisal, as all other loss settlement provisions, is subject to all the terms and conditions of the contract policy of insurance. Appraisal is a dispute resolution specifically related to the value of individual items which total the amount of loss. Appraisal in no way determines coverage. Coverage issues are governed by the terms, conditions, exclusions and limitations of the policy. An award does not eliminate compliance with the terms and conditions of the policy.

Should you possess any documentation contrary to these findings, please forward as soon as possible for review and consideration.

Nothing herein constitutes, nor should it be construed by anyone, as a waiver of any rights or defenses of Citizens Property Insurance Corporation under its policy of insurance. Nor is it the purpose of this letter to waive any of the policy terms and conditions all of which are expressly reserved.

Sincerely,

Shafter Nave
Citizens Property Insurance Corporation
Disputed Claims Specialist
Phone: (866) 858-0649 ext 4160
Fax: (866) 574-9128
Shafter.Nave@CitizensFLA.com

*Florida 817.234(1)(b) states that any person who, knowingly and with the intent to injure, defraud, or deceive any insurer by filing a statement of claim or application containing false, incomplete, or misleading information is guilty of a felony in the third degree*

Cc:

Appraiser for the Insurer – David Justice
Premier Adjusting Services
P.O. Box 1672
Oldsmar, FL 34677
Ph. 813-818-8418

Attorney for Insured – Jonathan C. Buckland
Law Offices of Buckland & Associates, P.A.
1101 Brickell Ave. Suite 1801
Miami, FL 33131
Ph. 305-400-8082

Public Adjuster for the Insured – Frances Venezia
Professional Public Adjusters, Inc.
801 Monterey St. Suite #205-B
Coral Gables, FL 33134
Ph. 305-446-8028

Appraiser for the Insured – Paul Middleton
Elite Claims Services
1518 Cleveland St.
Hollywood, FL 33020
Ph. 954-922-9191

Exhibit "C"

LAW OFFICE OF
# BUCKLAND & ASSOCIATES, P.A.

July 1, 2010

**Via Facsimile**
Paul Middleton, CFEI, CFII
Appraiser for the Insured, Jeannette Branam
Insurance Estimating & Appraisal, Inc.
3389 Sheridan Street, #136
Hollywood, Florida 33021

> Re:     **Jeannette Branam Appraisal**
>         Citizens Claim Number:  276650
>         Date of Loss:  October 24, 2005

Dear Mr. Middleton:

Thank you for letting me know that you did not receive Citizens' April 9, 2010 Memorandum of Appraisal until it was hand-delivered to you by Mr. Justice on June 29, 2010, during a meeting you had with Mr. Justice after conducting the appraisal inspection earlier that day.  Given that the above-referenced Memorandum of Appraisal was addressed to the Appraisal Panel, an intent by Citizens' to withhold from you delivery of same until June 29, 2010, if established, should be deemed to be, at a minimum, highly improper.

Please allow this correspondence to confirm to the Appraisal Panel that there has been no agreement by the insured to exclude any items of damage whatsoever from the appraisal process, notwithstanding Shafter Nave's discussion of Citizens' purported position as to the items of damage enumerated in his April 9, 2010 Memorandum of Appraisal.  Citizens' April 9, 2010 agreement to submit this matter to appraisal was not conditioned upon any agreement between Citizens and the insured as to the scope of damages to be included in appraisal process, and, as you can see from the copy of the attached April 9, 2010 e-mail correspondence I received from Mr. Nave confirming Citizens' agreement to finally submit this matter to the appraisal process after the insured's multiple previous requests for same, Mr. Nave makes no reference therein to any condition upon which Citizens predicated its decision to submit this claim to appraisal.

Please don't hesitate to present this correspondence and the attached e-mail to Mr. Justice and the umpire as you should see fit in conducting this appraisal.  Further, in response to Mr. Nave's April 9, 2010 Memorandum of Appraisal, I would submit for the Appraisal Panel that it is well settled under Florida law that "causation is a coverage question for the court when an insurer wholly denies that there is a covered loss and an amount-of-loss question for the appraisal panel when an insurer admits that there is covered loss, the amount of which is

disputed". <u>Johnson v. Nationwide Mutual Insurance Company</u>, 828 So.2d 1021 (Fla. 2002), and that, in the claim at issue in this appraisal, there is no dispute that Citizens has not wholly denied that there is a covered loss. Moreover, given Citizens' unconditional agreement to submit this claim to appraisal, and in light of the policy provisions that clearly afford coverage for damages caused by windstorm, Citizens' position that certain items of damage are "not being considered or extended coverage for this Appraisal" is misleading to the Appraisal Panel, disingenuous, and has no bearing on the Appraisal Panel's duty to include within their determination as to the total amount of this loss all items of damage determined by the Appraisal Panel to be within the scope of this loss.

If Citizens refuses, ultimately, to issue payment for the portion of the appraisal award attributable to the items of damage enumerated in its Memorandum of Appraisal, it does so at its own peril, and regardless of Citizens' future handling of this matter, all items of damage determined by the Appraisal Panel to have been caused by this loss must be included in the Appraisal Panel's determination as to the total amount of this loss. If you should wish to further discuss this matter, please don't hesitate to contact me at your convenience.

Respectfully,

Jonathan C. Buckland

/ Attachment -- April 9, 2010 e-mail correspondence from Shafter Nave to Jonathan Buckland, Attorney for the Insured

cc: Mrs. Jeannette Branam; Frances C. Venezia; Shafter Nave

**Jonathan Buckland**

| | |
|---|---|
| From: | Shafter Nave [Shafter.Nave@citizensfla.com] |
| Sent: | Friday, April 09, 2010 4:15 PM |
| To: | Jonathan Buckland |
| Cc: | David Justice |
| Subject: | RE: JEANNETTE BRANAM Claim# 276650 |

We are reassigning this to David Justice to act as our appraiser. We feel with him being involved as our Loss Consultant he has the most current knowledge of the issues regarding this claim, and that this would also facilitate a faster resolution to this claim. Mr. Justice has already been notified of his reassignment as the Appraiser, and he should be contacting your office within the next few days. Please have your umpire list ready so that we may begin the selection process, get the Declaration of Appraisers signed, and continue moving forward with this Appraisal Process.

Thank you,

**Shafter Nave**
Disputed Claims Specialist
Citizens Property Insurance Corp.
Ph. 866-858-0649 Ext. 4160

"This email contains legally privileged and confidential information intended only for the individual or entity named within the message. If the reader of this message is not the intended recipient, or the agent responsible to deliver it to the intended recipient, you are hereby notified that any review, dissemination, distribution or copying of this communication is prohibited. If this communication was received in error, please notify us by reply e-mail and delete the original message."

**From:** Jonathan Buckland [mailto:jcb@bucklandlegal.com]
**Sent:** Friday, April 09, 2010 3:24 PM
**To:** Shafter Nave
**Subject:** RE: JEANNETTE BRANAM Claim# 276650

Thank you for the update, Mr. Nave. While Mrs. Branam has been receptive to the potential of resolving this matter outside of the appraisal process, we would agree, at this juncture, that appraisal is the appropriate manner by which to resolve the ongoing disagreement over the amount of this loss, so that will be fine. Have a nice weekend, and I look forward to hearing from you next week regarding your identification of Citizens' appraiser.

**Jonathan C. Buckland**
BUCKLAND & ASSOCIATES, P.A.
1101 Brickell Avenue, Suite 1801
Miami, Florida 33131
(P) 305.400.8082
(F) 305.400.8083
(C) 786.208.6081

The contents of this e-mail message and any attachments are intended solely for the addressee(s) named in this message. This communication is confidential, and may be subject to applicable lawyer-client and/or work product privileges. If you are not the intended recipient of this message, or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and its attachments. Do not deliver, distribute or copy this message and/or any attachments and if you are not the intended recipient, and do not disclose the contents or take any action in reliance upon the information contained in this communication or any attachments.

**From:** Shafter Nave [mailto:shafter.Nave@citizensfla.com]
**Sent:** Friday, April 09, 201    3 PM
**To:** Jonathan Buckland
**Subject:** JEANNETTE BRANAM Claim# 276650

Mr. Buckland,

I hope all is well. I have finished my review and I have weighed all the reports and documents submitted by you, the insured, the PA, our inspections and reports, as well as all prior evaluations. Although I do feel that my $50,000 New Money offer to settle this claim was in line with the actual damage, since you have rejected this offer, I am now retracting that offer and it is no longer available for consideration. I am moving this claim to Appraisal. I have submitted a request to name an appraiser to my team lead. I have also drafted a few letters regarding this appraisal, and once I receive approval for them, they will be mailed to your office. I hope to have everything completed, assigned, and mailed no later than Monday afternoon or early Tuesday morning. If there are any questions, please do not hesitate to contact me.

Thank you and have a nice weekend,

**Shafter Nave**
Disputed Claims Specialist
Citizens Property Insurance Corp.
Ph. 866-858-0649 Ext. 4160

"This email contains legally privileged and confidential information intended only for the individual or entity named within the message. If the reader of this message is not the intended recipient, or the agent responsible to deliver it to the intended recipient, you are hereby notified that any review, dissemination, distribution or copying of this communication is prohibited. If this communication was received in error, please notify us by reply e-mail and delete the original message."

## APPRAISAL AWARD

Name of Insured                    Lawredge Brendo

Property Address                   17 Sue Irwing
                                   Miami Beach Fl c c 6c

Policy Number                      678 B2c

Claim Number                       2 90c 4

Date of Loss                       07 23 20l0

We, the undersigned, by virtue of the authority appointment and fulfillment of the terms and conditions of the insurance policy and agreement set forth herein, have examined on the specified portion of the assessment agreed upon items for costs of claim for the approved and determined and defaults award the amount and hereby sign to sue.

| COVERAGE | RCV | ACV |
|----------|-----|-----|
| Building | $296,389.24 | $296,389.24 |
| APS | $ 49,941.84 | $ 49,941.84 |
| Contents | $ 35,000.00 | $ 31,500.00 |
| ALE | not appraised | |

This award is subject to all terms and conditions of the insurance policy. This award is made without consideration for any prior partial payments or deductible(s). Prior payments, if any, will be subtracted from the gross award amount listed above.

We the undersigned

Elena Sues
Appraiser for Insured

11-23-10
Date

Insurance Co
Appraiser for Insurer

11/23/2010
Date

Neutral Umpire
Date

EXHIBIT "C" "E"

CITIZENS PROPERTY INSURANCE CORPORATION
PO BOX 19700
JACKSONVILLE, FL 32245-9700

TELEPHONE: (866) 411-2742   FAX: (866) 574-9128



January 18, 2011

Jeanette Branam
42 Star Island Dr.
Miami Beach, FL 33139

RE:   Citizens Claim Number:        276650
      Citizens Policy Number:       5780826
      Claimed Date of Loss:         10/24/2005
      Claimed Cause of Loss:        Wind – Hurricane Wilma
      Claimed Loss Location:        42 Star Island Dr. Miami Beach, FL 33139

Dear Ms. Branam:

We are making a claim payment to you in the amount of $102,024.16. Deductions are applied to
the payment for items that were the subject of a memorandum of appraisal prior to submitting the
claim(s) to the appraisal process. The items/areas/rooms deducted from the payment are:

Main House –

1.   Family Room – all line items per Umpire estimate
2.   Kitchen – all line items per Umpire estimate
3.   Pantry – all line items per Umpire estimate
4.   Breakfast Area – all line items per Umpire estimate
5.   East Foyer – all line items per Umpire estimate
6.   Entry/Foyer – all line items per Umpire estimate
7.   Living Room – all line items per Umpire estimate
8.   Master Bedroom – all line items per Umpire estimate
9.   South Hallway – all line items per Umpire estimate
10.  North hall 2nd Floor – all line items per Umpire estimate
11.  Sewing Room – all line items per Umpire estimate
12.  North hall 2nd Floor – all line items per Umpire estimate
13.  Bedroom 1 – all line items per Umpire estimate
14.  Bedroom 2 – all line items per Umpire estimate
15.  Bedroom 3 – all line items per Umpire estimate
16.  Contents – Draperies
17.  Exterior – all line items per Umpire estimate
18.  Dining Room – Custom Painting – per artist - Ceiling Prep and Ceiling Trim

Carriage House –
1.   Kitchen/Dining – all line items per Umpire estimate

Boat House –

1. Upstairs – all line items per Umpire estimate
2. 1st Floor – all line items per Umpire estimate

There were many other items/areas/rooms that had been declined coverage/consideration, please Memorandum and Partial Denial Letters, with this Appraisal process. However, the Umpire did not make any allowances for these area, hence they have not been shown above. This payment is being made as provided by your policy on the following coverages:

| | Cov A | Cov B | Cov C | | |
|---|---|---|---|---|---|
| Award | $296,389.24 | $49,941.84 | $35,000 | | |
| Non-recoverable Depreciation | | | $3,500 | | |
| Coverage Excess | | | | | |
| Overpayment | | | | | |
| Memorandum | $147,764.76 | $18,079.78 | $31,500 | | |
| Prior Payment(s) | $0.00 | $0.00 | $0.00 | | |
| Deductible(s) | $72,550 | $0.00 | $0.00 | | |
| Net Payment | $76,074.48 | $31,862.06 | $0.00 | | |

In addition, the Coverage B items shown in the Award should have been written for Cov A under Line Item 2, since per the Work Order they have a separate line of coverage with separate coverage amounts and deductible listed. However, we have shown them above as they were awarded so there would be no confusion. In addition, we are moving forward with applying the amounts above to the appropriate coverage's and line items within our system so that this process is not extended any further with requests for corrections. Below is a breakdown of how the amounts should have been listed on the award and how they have been calculated within our system.

| | Cov A Line Item 1 – Main House & Carriage House | Cov A Line Item 2 - Boat House (Guest House) | Cov C | | |
|---|---|---|---|---|---|
| Award | $322,291.21 | $25,856.68 | $35,000 | | |
| Non-recoverable Depreciation | | | $3,500 | | |
| Coverage Excess | | | | | |
| Overpayment | | | | | |
| Memorandum | $149,141.03 | $14,432.70 | $31,500 | | |
| Prior Payment(s) | $0.00 | $0.00 | $0.00 | | |
| Deductible(s) | $72,550 | $10,000 | $0.00 | | |
| Net Payment | $100,600.18 | $1,423.98 | $0.00 | | |

Appraisal, like all loss settlement provisions, is subject to all the terms and conditions of your policy. Appraisal is a dispute resolution specifically related to the value of individual items which

total the amount of loss. Appraisal does not determine coverage. All policy coverage issues are governed by the terms, conditions, exclusions and limitations of the policy.

Nothing herein constitutes, nor should it be construed by anyone, as a waiver of any rights or defenses of Citizens Property Insurance Corporation under its policy of insurance. Nor is it the purpose of this letter to waive any of the policy terms and conditions all of which are expressly reserved.

Sincerely,

Shafter Nave
Disputed Claim Specialist
Citizens Property Insurance Corporation
Litigation and Disputed Claims Unit
Phone: (866) 411-2742 ext 4160
Fax: (866) 574-9128
Shafter.Nave@CitizensFLA.com

*If this document contains an excerpt from a Citizens Property Insurance Policy ("the Policy") it is provided here for informational purposes only. This excerpt is not the official version of the Policy. The official version of the Policy is the policy issued to the insured on the policy effective date. In the event there is inconsistency between this document and the Policy, the Policy shall serve as the official version.*

*F.S. 817.234(1)(b) Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.*

CC:
Attorney for Insured – Jonathan C. Buckland
Law Offices of Buckland & Associates, P.A.
1101 Brickell Ave. Suite 1801
Miami, FL 33131
Ph. 305-400-8082

Public Adjuster for the Insured – Frances Venezia
Professional Public Adjusters, Inc.
801 Monterey St. Suite #205-B
Coral Gables, FL 33134
Ph. 305-446-8028

Appraiser for the Insured – Hector Sicre
Rebuild Construction, Inc.
7250 NW 8th St. Bay #5
Miami, FL 33126

Exhibit "C"

CITIZENS PROPERTY INSURANCE CORPORATION
JACKSONVILLE OFFICE
P.O. BOX 19470
JACKSONVILLE, FL 32245-9470
TELEPHONE: (866) 411-2742  FAX: (866) 858-0650



## Statement of Loss

### Claim Details

| Claim#: | 276650/HRA | Insured: | BRANAH, JEANNETTE |
|---|---|---|---|
| Policy#: | S780026 | CAT: | HURRICANE WILMA |
| Date: | 01/14/2011 | Mailing Address: | 42 STAR ISLAND DR MIAMI BEACH, FL 33139 |
| Property Address: | 42 STAR ISLAND DR MIAMI BEACH, FL 33139 MIAMI-DADE county | | |

### Claim Item 1

#### Prior Payment Summary

| | Dwelling | Debris | Ordinance & Law | Other Structures | Personal Property | Additional Living Expense | Fair Rental Value | TOTALS |
|---|---|---|---|---|---|---|---|---|
| Policy Limits | $1,451,000.00 | $72,550.00 | $362,750.00 | $145,100.00 | $725,500.00 | $145,100.00 | $145,100.00 | |
| Prior Payments | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

#### Coverage Details

| Coverage | Gross Claim Detail Description | Detail Amounts | Gross Claim Amount |
|---|---|---|---|
| Dwelling(A) | Payment is based off of Award and MOA | $173,150.18 | $173,150.18 |

#### Claim Summary

| | |
|---|---|
| Gross Claim Amount | $173,150.18 |
| Non-recoverable Depreciation | $0.00 |
| Recoverable Depreciation | $0.00 |
| Hold Portion of Claim | $0.00 |
| AOP Deductible Applied | $0.00 |
| Hurricane Deductible Applied | $72,550.00 |
| Prior Payments | $0.00 |
| Net Payment | $100,600.18 |

Notes

Exhibit "C"

CITIZENS PROPERTY INSURANCE CORPORATION
JACKSONVILLE OFFICE
P.O. BOX 19470
JACKSONVILLE, FL 32245-9470
TELEPHONE: (866) 411-2742   FAX: (866) 858-0650



## Statement of Loss

### Claim Details

| Claim#: | 276650/HRA | Insured: | BRANAM, JEANNETTE |
|---|---|---|---|
| Policy#: | 5780826 | CAT: | HURRICANE WILMA |
| Date: | 01/14/2011 | Mailing Address: | 42 STAR ISLAND DR MIAMI BEACH, FL 33139 |
| Property Address: | 42 STAR ISLAND DR MIAMI BEACH, FL 33139 MIAMI-DADE county | | |

### Claim Item 2

#### Prior Payment Summary

| | Dwelling | Debris | Ordinance & Law | Other Structures | Personal Property | Additional Living Expense | For Rental Value | TOTAL |
|---|---|---|---|---|---|---|---|---|
| Policy Limits | $200,000.00 | $10,000.00 | $50,000.00 | $20,000.00 | $0.00 | $20,000.00 | $20,000.00 | |
| Prior Payments | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

#### Coverage Details

| Coverage | Gross Claim Detail Description | Detail Amount | Gross Claim Amount |
|---|---|---|---|
| Dwelling(A) | Payment is based off of Award and HOA | $11,423.98 | $11,423.98 |

#### Claim Summary

| | |
|---|---|
| Gross Claim Amount | $11,423.98 |
| Non-recoverable Depreciation | $0.00 |
| Recoverable Depreciation | $0.00 |
| Held Portion of Claim | $0.00 |
| ACV Deductible Applied | $0.00 |
| Hurricane Deductible Applied | $10,000.00 |
| Prior Payments | $0.00 |
| Net Payment | $1,423.98 |

Notes

Exhibit "C"

CITIZENS PROPERTY INSURANCE CORPORATION
JACKSONVILLE, FL 32216

| | CHECK DATE | CHECK NUMBER |
|---|---|---|
| | 1/19/11 | 327828 |

IN   PAYMENT OF WINDSTORM LOSS OF 10/24/05   COVERED BY POLICY NO. - 5780826

WIND CLAIM NO. - 276650

IMPORTANT:   ALL PAYEES MUST ENDORSE THIS CHECK

Loss Payment Itemization

Building                                             1,423.98

:AW OFFICES OF BUCKLAND & ASSOCIATES
:101 BRICKELL AVE. SUITE 1801
:IIAMI,   FL 33131

THE ATTACHED CHECK IS IN PAYMENT OF ITEMS DESCRIBED ABOVE.
IF INCORRECT PLEASE NOTIFY US IMMEDIATELY. NO RECEIPT REQUIRED.

PLEASE DETACH STUB
BEFORE CASHING.

| TOTAL | 1423.98 |
|---|---|

CITIZENS PROPERTY INSURANCE CORPORATION
6676 Corporate Center Parkway
JACKSONVILLE, FLORIDA 32216-0973

WACHOVIA BANK
JACKSONVILLE, FLORIDA

63-1012
652

327828

WIND POLICY NO.   5780826
WIND CLAIM NO.    276650

CHECK
NUMBER   327828   CHECK
DATE   1/19/11

| AMOUNT | $****1,423.98* |
|---|---|

**One Thousand Four Hundred Twenty-Three And 98/100** Dollars

PAY   BRANAM, JEANNETTE
TO THE   & COUNTRYWIDE HOME  LOANS & HSBC MTG CORP &LAW
ORDER   OFFICE OF BUCKLAND  & ASSOC.& PROFESSIONAL P.A
OF

This document has a colored background, not a white background.

VOID IF THIS DOCUMENT CONTAINS HEAT SENSITIVE INK, TOUCH OR PRESS HERE & RED IMAGE DISAPPEARS WITH EXPOSURE

**CITIZENS PROPERTY INSURANCE CORPORATION**
JACKSONVILLE, FL 32216

| CHECK DATE | CHECK NUMBER |
|---|---|
| 1/19/11 | 327820 |

IN   PAYMENT OF WINDSTORM LOSS OF 10/24/05   COVERED BY POLICY NO. - 5780826
WIND CLAIM NO. - 276650

IMPORTANT:   ALL PAYEES MUST ENDORSE THIS CHECK

Loss Payment Itemization

Building                    100,600.18

LAW OFFICES OF BUCKLAND & ASSOCIATES, P.A.
1101 BRICKELL AVE. SUITE 1801
MIAMI, FL 33131

THE ATTACHED CHECK IS IN PAYMENT OF ITEMS DESCRIBED ABOVE.
IF INCORRECT, PLEASE NOTIFY US IMMEDIATELY. NO RECEIPT REQUIRED.

PLEASE DETACH STUB
BEFORE CASHING.

| TOTAL | 100600.18 |
|---|---|

**CITIZENS PROPERTY INSURANCE CORPORATION**
6676 Corporate Center Parkway
JACKSONVILLE, FLORIDA 32216-0973

WACHOVIA BANK
JACKSONVILLE, FLORIDA

63-1012
632

327820

WIND POLICY NO.   5780826
WIND CLAIM NO.    276650

| CHECK NUMBER | 327820 | CHECK DATE | 1/19/11 |
|---|---|---|---|

| AMOUNT | $**100,600.18* |
|---|---|

**One Hundred Thousand Six Hundred And 18/100** Dollars

PAY
TO THE
ORDER
OF

BRANAM, JEANNETTE
& COUNTRYWIDE HOME LOANS & HSBC MTG CORP &LAW
OFFICE OF BUCKLAND & ASSOC & PROFESSIONAL P.A

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO.: 10-01614 CA 09

STAR ISLAND FINANCIAL, LLC,

     Plaintiff,

vs.

JEANNETTE BRANAM, HSBC MORTGAGE
CORPORATION (USA), and all Unknown Parties
Claiming by, through, under and against the above
named Defendant(s) who are not known to be dead
or alive, whether said Unknown Parties may claim
an interest as Spouse, Heirs, Devisees, Grantees or
other Claimaints,

     Defendants.

_____/

## FINAL JUDGMENT OF FORECLOSURE
(Pursuant to Administrative Order 09-09)

**THIS ACTION** was heard before the Court on Plaintiff's Summary Final Judgment on March

27, 2012. On the evidence presented,

### IT IS ORDERED AND ADJUDGED that:

    1.    The Plaintiff's Motion for Summary Judgment is GRANTED. Service of process
has been duly and regularly obtained over Defendants: Jeannette Branam, and HSBC Mortgage
Corporation.

    2.    **Amounts Due.** There is due and owing to the Plaintiff from defendant, Jeanette
Branam, the following:

| | | |
|---|---|---|
| Principal due on the note secured by the mortgage foreclosed: | $ | 10,000,000.00 |
| Interest on the note and mortgage from April 1, 2009 to March 27, 2012 (Per Diem Rate of $1,712.33 per day): | $ | 1,868,721.15 |

Exhibit "D"

| | | |
|---|---|---|
| Taxes and Insurance: | $ | 637,451.71 |
| Late Charges | $ | ~~26,041.70~~ |
| **SUBTOTAL** | $ | 12,532,214.56 |
| Attorneys fees | $ | 5600.00 |
| **GRAND TOTAL** | $ | 12,511.71 , 86 ~~12,537,814.56~~ |

3. **Interest.** The grand total amount referenced in Paragraph 2 shall bear interest from this date forward at the prevailing legal rate of interest.

4. **Lien on Property.** Plaintiff whose address is 1647 North View Drive, Miami Beach, Florida 33140, holds a lien for the grand total sum specified in paragraph 2 herein. The lien of the plaintiff is superior in dignity to any right, title, interest or claim of the defendants and all persons, corporations, or other entities claiming by, through, or under the defendants or any of them and the property will be sold free and clear of all claims of the defendants, with the exception of any assessments that are superior pursuant to Florida Statutes, Section 718.116. The plaintiff's lien encumbers the subject property located in Miami-Dade County, Florida and described as:

LOT 42, OF STAR ISLAND, ACCORDING TO THE PLAT THEREOF, RECORDED IN PLAT BOOK 5, AT PAGE 52, OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA A/K/A LOT 42, OF CORRECTED PLAT OF STAR ISLAND, ACCORDING TO THE PLAT THEREOF, RECORDED IN PLAT BOOK 31, AT PAGE 60, OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA.

Property address: 42 Star Island Drive, Miami Beach, Florida 33139

5. **Sale of Property.** If the grand total amount with interest at the rate described in Paragraph 3 and all costs accrued subsequent to this judgment are not paid, the Clerk of the Court shall sell the subject property at public sale on _____, 20__, to the highest bidder for cash, except as prescribed in Paragraph 6, at:

[ ]   Room 908, 140 West Flagler Street, Miami, Florida at 11:00 a.m.
[ ]   www.miamidade.realforeclose.com, the Clerk's website for on-line auctions at 9:00 a.m.

after having first given notice as required by Section 45.031, Florida Statutes.

6.    **Costs.** Plaintiff shall advance all subsequent costs of this action and shall be reimbursed for them by the Clerk if plaintiff is not the purchaser of the property for sale. If plaintiff is the purchaser, the Clerk shall credit plaintiff's bid with the total sum with interest and costs accruing subsequent to this judgment, or such part of it, as is necessary to pay the bid in full. The Clerk shall receive the service charge imposed in Section 45.031, Florida Statutes, for services in making, recording, and certifying the sale and title that shall be assessed as costs.

7.    **Right of Redemption.** On filing of the Certificate of Sale, defendant's rights of redemption as proscribed by Florida Statutes, Section 45.0315 shall be terminated.

8.    **Distribution of Proceeds.** On filing the Certificate of Title, the Clerk shall distribute the proceeds of sale, so far as they are sufficient, by paying: first, all of the plaintiff's costs; second, documentary stamps affixed to the Certificate; third, plaintiff's attorneys' fees; forth, the total sum due to the plaintiff, less the items paid, plus interest at the rate prescribed in paragraph 2 from this date to the date of the sale. During the sixty (60) days after the Clerk issues the certificate of disbursements, the Clerk shall hold the surplus pending further Order of this Court.

9.    **Right of Possession.** Upon fling of the Certificate of Title, defendant and all persons claiming under or against defendant since the filing of the Notice of Lis Pendens shall be foreclosed of all estate or claim in the property and the purchaser at sale shall be let into possession of the property, subject to the provisions of the "Protecting Tenant at Foreclosure Act of 2009."

10.    **Attorneys Fees.** The Court finds, based upon the affidavits presented and upon inquiry of counsel for the plaintiff, that 14 hours were reasonably expended by plaintiff's counsel and that an hourly rate of $400.00 is appropriate. PLAINTIFF'S COUNSEL REPRESENTS THAT THE ATTORNEY FEE AWARDED DOES NOT EXCEED ITS CONTRACT FEE WITH THE PLAINTIFF. The Court finds that there are no reduction or enhancement factors for consideration by the Court pursuant to *Florida Patient's Compensation Fund v. Rowe,* 472 So.2d 1145 (Fla. 1985).

11.    <u>**NOTICE PURSUANT TO AMENDMENT TO SECTION, 45.031 FLA. STAT. (2006)**</u>

IF THIS PROPERTY IS SOLD AT PUBLIC AUCTION, THERE MAY BE ADDITIONAL MONEY FROM THE SALE AFTER PAYMENT OF PERSONS WHO ARE ENTITLED TO BE PAID FROM THE SALE PROCEEDS PURSUANT TO THE FINAL JUDGMENT.

IF YOU ARE A SUBORDINATE LIEN HOLDER CLAIMING A RIGHT TO FUNDS REMAINING AFTER THE SALE, YOU MUST FILE A CLAIM WITH

THE CLERK NO LATER THAN SIXTY (60) DAYS AFTER THE SALE. IF YOU FAIL TO FILE A CLAIM, YOU WILL NOT BE ENTITLED TO ANY REMAINING FUNDS.

IF YOU ARE THE PROPERTY OWNER, YOU MAY CLAIM THESE FUNDS YOURSELF. YOU ARE NOT REQUIRED TO HAVE A LAWYER OR ANY OTHER REPRESENTATION AND YOU DO NOT HAVE TO ASSIGN YOU RIGHTS TO ANYONE ELSE IN ORDER FOR YOU TO CLAIM ANY MONEY TO WHICH YOU ARE ENTITLED. PLEASE CHECK WITH THE CLERK OF THE COURT, 140 WEST FLAGLER STREET, ROOM 908, MIAMI, FLORIDA (TELEPHONE: (305) 375-5943), WITHIN (10) DAYS AFTER THE SALE TO SEE IF THERE IS ADDITIONAL MONEY FROM THE FORECLOSURE SALE THAT THE CLERK HAS IN THE REGISTRY OF THE COURT.

IF YOU DECIDE TO SELL YOUR HOME OR HIRE SOMEONE TO HELP YOU CLAIM THE ADDITIONAL MONEY, YOU SHOULD READ VERY CAREFULLY ALL PAPERS YOU ARE REQUIRED TO SIGN, ASK SOMEONE ELSE, PREFERABLY AN ATTORNEY WHO IS NOT RELATED TO THE PERSON OFFERING TO HELP YOU, TO MAKE SURE THAT YOU UNDERSTAND WHAT YOU ARE SIGNING AND THAT YOU ARE NOT TRANSFERRING YOUR PROPERTY OR THE EQUITY IN YOUR PROPERTY WITHOUT THE PROPER INFORMATION. IF YOU CANNOT AFFORD TO PAY AN ATTORNEY, YOU MAY CONTACT THE LEGAL AID SOCIETY AT THE DADE COUNTY BAR ASSOCIATION, 123 N.W. FIRST AVENUE, SUITE 213, MIAMI, FLORIDA, (TELEPHONE: (305) 579-5733), TO SEE IF YOU QUALIFY FINANCIALLY FOR THEIR SERVICES. IF THEY CANNOT ASSIST YOU, THEY MAY BE ABLE TO REFER YOU TO A LOCAL BAR REFERRAL AGENCY OR SUGGEST OTHER OPTIONS. IF YOU CHOOSE TO CONTACT THE DADE COUNTY BAR ASSOCIATION LEGAL AID SOCIETY, YOU SHOULD DO SO AS SOON AS POSSIBLE AFTER RECEIPT OF THIS NOTICE.

12.    **Jurisdiction.** The Court retains jurisdiction of this action to enter further orders that are proper, including, without limitation, writs of possession and deficiency judgments.

        **DONE AND ORDERED** in Chambers in Miami Dade County, Florida this

_____ day of _____, 20__.

Conformed Copy

MAR 2 7 2012

_____
~~Jerald Bagley~~
Circuit Judge
~~Circuit Court Judge~~

Copies furnished to all parties:

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

JEANNETTE BRANAM

CASE NO.: 2010-56927-CA-01

        Plaintiff,

vs.

CITIZEN PROPERTY INSURANCE
CORPORATION,

        Defendant.

_____/

## THIRD PARTY STAR ISLAND FINANCIAL LLC'S
## *EMERGENCY* MOTION TO INTERVENE

Third Party, Star Island Financial, LLC ("Intervenor" and/or "Star Island"), as an interested party, by and through undersigned counsel and pursuant to Fla.R.Civ.P. Rule 1.230, hereby moves to intervene on an *emergency* basis in the above styled action and in support thereof states as follows:

1.    This is an action brought by plaintiff, Jeannette Branam ("Plaintiff"), to recover additional sums of money pursuant to an insurance claim on her property located at 42 Star Island, Miami Beach, Florida 33139 (the "Property").

2.    Intervenor, Star Island, is the first mortgage holder of the Property by virtue of an Assignment of the Note and Mortgage from JPMorgan Chase Bank, N.A. to Star Island. True and correct copies of the documents assigning the note and mortgage to Star Island are attached hereto as Exhibit "A."

3.    On March 27, 2012, Star Island obtained a Final Summary Judgment of Foreclosure in its favor against Jeannette Branam. Pursuant to the Final Judgment the court determined that Star Island held a valid first mortgage against the Property with rights superior to

\812158\3 - # 740877 v1

Exhibit "E"
1

other lien holders. A true and correct copy of the Final Judgment of Foreclosure is attached hereto as Exhibit "B."

4. Upon information and belief the parties to the present action have reached a settlement wherein the defendant, Citizens Property Insurance Corporation ("Defendant" and/or "Citizens"), has agreed to pay Plaintiff monies under the insurance policy for damage which occurred to the real property. Intervenor is a real party entitled to these settlement monies as set forth below.

5. Plaintiff's counsel has argued that the settlement funds should be issued by check made in favor of only Plaintiff and that Intervenor has no interest in these funds..

6. Star Island as the first mortgage holder does have a direct interest in the settlement proceeds by virtue of its mortgage which provides in pertinent part under paragraph 5:

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earning on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

A true and correct copy of the mortgage in favor of Star Island (the "Mortgage") is attached hereto as Exhibit "B."

\812158\3 - # 740877 v1

Exhibit "E"
2

7.     Star Island seeks to intervene in order to protect and preserve its rights to the monies pursuant to the terms and conditions of the mortgage.

8.     Fla.R.Civ.P. Rule 1.230 states that:

Anyone claiming an interest in pending litigation may at any time be permitted to assert a right by intervention, but the intervention shall be in subordination to, and in recognition of, the propriety of the main proceeding, unless otherwise ordered by court in its discretion.

9.     The long standing test as to entitle a party to intervene is that the interest which will entitle a person to intervene must be in the matter in litigation, and of such a direct and immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment. See Highwoods DLF EOLA, LLC v. Condo Developer, LLC, 51 So.3d 570, 572 (Fla. 5th DCA 2010)(citing Morgareidge v. Howey, 75 Fla. 234 (Fla. 1918)).

10.    Should these monies be discharged without payment to Star Island Financial, LLC., it will suffer irreparable harm.

10.    Star Island, under the terms and conditions of the Mortgage has an immediate interest in the outcome of this litigation and whether the settlement check is issued in its name as an additional payee.

**WHEREFORE**, Star Island respectfully requests this Court to grant its motion and allow it intervene as an interested party and for any further relief that this Court deems just and proper.

Respectfully submitted,

GrayRobinson, P.A.
1221 Brickell Avenue, Suite 1600
Miami, Florida 33131
Phone: (305) 416-6880
Facsimile: (305) 416-6887

By:_____

Gary M. Carman, Esq.
Florida Bar No. 179409
Richard F. Danese, Esq.
Florida Bar No. 58458

Exhibit "E"
3

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent by Facsimile
and U.S. mail to: Jorge L. Cruz-Bustillo, Esq., The Barthet Firm, 200 S. Biscayne Blvd. Suite
1800, Miami, Florida 33131, and Jonathan C. Buckland, Esq., Buckland & Dang, P.A., 12700
Biscayne Blvd., Ste 305, North Miami, Florida 33181 on this 7 day of June, 2012.

By: _____
Gary M. Carman, Esq.

\812158\3 - # 740877 v1

IN THE CIRCUIT COURT IN AND FOR THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

JEANETTE BRANAM,

GENERAL JURISDICTION DIVISION

        Plaintiff,

CASE NO. 10-56927-CA-11

vs.

CITIZENS    PROPERTY    INSURANCE
CORPORATION,

        Defendant.

_____/

### EMERGENCY MOTION TO INTERVENE FILED BY DREW M. DILLWORTH, AS CHAPTER 7 BANKRUPTCY TRUSTEE OF THE ESTATE OF JEANETTE BRANAM

        Third Party, Drew M. Dillworth, as Chapter 7 bankruptcy trustee for the bankruptcy estate of Jeanette Branam, pending in the United States Bankruptcy Court for the Southern District of Florida, Case No. 10-28135-BKC-AJC (the "Trustee"), as an interested party, by and through undersigned counsel and pursuant to Fla. R. Civ. P. 1.230, moves to intervene on an emergency basis in the above-styled action, and in support thereof states as follows:

        1.      This is an action brought by the plaintiff, Jeannette Branam (the "Plaintiff"), to recover sums of money pursuant to an insurance claim (the "Insurance Claim") on her real property located at 42 Star Island Dr, Miami Beach, FL 33139 (the "Property"), which arose on or around October 24, 2005, as a result of damage from Hurricane Wilma.

        2.      On June 28, 2010 (the "Petition Date"), the Plaintiff commenced a voluntary Chapter 7 bankruptcy proceeding in the United States Bankruptcy Court for the Southern District of Florida, Case No. 10-28135-BKC-AJC (the "Bankruptcy Proceeding"). Attached hereto as Exhibit "A" is a true and correct copy of the Notice of Chapter 7 Bankruptcy Case.

        3.      The Trustee is the duly-appointed federal Chapter 7 bankruptcy trustee in the Bankruptcy Proceeding.

        4.      In the Plaintiff's bankruptcy schedules and statements, she failed to disclose the Insurance Claim, despite the fact that it arose prior to the Petition Date.

        5.      At the Plaintiff's Meeting of Creditors under 11 U.S.C. § 341 on August 3, 2010,

she again failed to disclose the Insurance Claim to the Trustee.

6.      At the Plaintiff's Rule 2004 Examination *Duces Tecum* on October 20, 2010, she once again failed to disclose the Insurance Claim to the Trustee's counsel, <u>despite the fact that she filed the above-captioned lawsuit a mere *two* days later</u>.  The Plaintiff had the affirmative duty *to* disclose the Insurance Claim in her bankruptcy schedules and statements and to the Trustee.  *See* 11 U.S.C. § 521(1).

7.      Since the Insurance Claim arose prior to the Petition Date, it is property of the bankruptcy estate, pursuant to 11 U.S.C. § 541, and is available for liquidation by the Trustee, for the benefit of the Plaintiff's creditors.  "Courts have uniformly held that the broad scope of § 541 encompasses causes of action existing at the time of the commencement of the bankruptcy action."  *Cain v. Hyatt*, 101 B.R. 440, 441 (E.D. Pa. 1989).

8.      "It is clear, therefore, that, after appointment of a trustee, a Chapter 7 debtor no longer has standing to pursue a cause of action which existed at the time the Chapter 7 petition was filed.  Only the trustee, as representative of the estate, has the authority to prosecute and/or settle causes of action."  *Id.*

9.      Upon information and belief, the parties to the present action have reached a settlement wherein the defendant, Citizens Property Insurance Corporation (the "Defendant"), has agreed to pay Plaintiff monies under the underlying insurance policy for damage that occurred to the Property.  The Trustee is the real party entitled to these settlement monies (along with the Plaintiff's mortgage holder), as set forth above, rather than the Plaintiff.

10.     Upon information and belief, Plaintiff has asserted that the settlement funds should be issued by check made in favor of the Plaintiff, the Plaintiff's counsel and the public adjuster.  Pursuant to 11 U.S.C. § 541, the Trustee disputes that the check should be made payable to the Plaintiff (or the Plaintiff's attorney), as the check should instead be made in favor of the Trustee, rather than the Plaintiff.

11.     The Trustee seeks to intervene in order to protect and preserve his rights to the

monies under applicable federal bankruptcy law.

12.    Fla. R. Civ. P. 1.230 states that:

Anyone claiming an interest in pending litigation may at any time be permitted to assert a right by intervention, but the intervention shall be in subordination to, and in recognition of, the propriety of the main proceeding, unless otherwise ordered by court in its discretion.

13.    The long-standing test as to entitle a party to intervene is that the interest which will entitle a person to intervene must be in the matter in litigation, and of such a direct and immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment.  *See Highwoods DLF EOLA, LLC v. Condo Developer, LLC*, 51 So. 3d 570, 572 (Fla. 5th DCA 2010) (*citing Morgareidge v. Howey*, 75 Fla. 234 (Fla. 1918)).

14.    Should these monies be discharged to the Plaintiff, rather than to the Trustee, the bankruptcy estate will suffer irreparable harm.

15.    The Trustee has an immediate interest in the outcome of this litigation and whether the settlement check is issued in his name.

WHEREFORE, the Trustee respectfully requests the Court enter an order allowing him to intervene as an interested party, and for such other and further relief as the Court deems just and proper.

Dated:  June 11, 2012.

LEIDERMAN SHELOMITH, P.A.
Attorneys for Drew M. Dillworth
2699 Stirling Road, Suite C401
Ft. Lauderdale, Florida 33312
Telephone: (954) 920-5355
Facsimile: (954) 920-5371

By: _____
ZACH B. SHELOMITH
Florida Bar No. 0122548
zshelomith@lslawfirm.net

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing motion was served on June 11, 2012 via U.S. Mail to Jorge L. Cruz-Bustillo, Esq., 200 S Biscayne Blvd # 1800, Miami, FL 33131, Jonathan C. Buckland, Esq., 12700 Biscayne Blvd # 305, North Miami, FL 33181 and Gary M. Carman, Esq., 1221 Brickell Ave # 1600, Miami, FL 33131.

By: _____

Zach B. Shelomith

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CIRCUIT CIVIL DIVISION
CASE NO: 10 - 56927 - CA - 11

Jeanette Branam

Plaintiff(s),

vs.

Citizens Property Insurance
Corporation          Defendant(s),

ORDER
GRANTING/~~DENYING~~
~~PLAINTIFF'S/DEFENDANT'S~~     Star
Drew Dillworth and  Island
Motions to Intervene  Financial,
LLCs

THIS CAUSE having come on to be heard on   July 26, 2012
on ~~Plaintiff's/Defendant's Motion~~

the Emergency Motions to Intervene filed by Drew
M. Dillworth, as Chapter 7 Bankruptcy Trustee and  Star Island
                                                   Financial,
and the Court having heard arguments of counsel, and being otherwise advised in the premises, it is hereupon   LLC

ORDERED AND ADJUDGED that said Motion be, and the same is hereby

GRANTED. Drew M. Dillworth, as Chapter 7
Bankruptcy Trustee, shall be authorized to
intervene in this proceeding.

→ and Star Island Financial, LLC

DONE AND ORDERED in Chambers at Miami-Dade County, Florida this  26th

day of   July                    , 2012

_____
CIRCUIT COURT JUDGE

Copies furnished to: Counsel of Record

117_01-554  3/11

DIANE WARD
CIRCUIT COURT JUDGE

Exhibit "G"